STATE OF NEBRASKA, APPELLEE, V.
HARRY STICKELMAN, APPELLANT.

299 N.W.2d 520

Filed December 5, 1980.   No. 43222.

Sean J. Brennan, Scott P. Helvie, and Shelley K. Stall for appellant.

Paul L. Douglas, Attorney General, and G. Roderic Anderson for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and BURKHARD, District Judge.

BRODKEY, J.

Harry Stickelman, the defendant, and appellant herein, appeals to this court from his conviction by the District Court for Lincoln County, Nebraska, for possessing more than 1 pound of marijuana in violation of Neb. Rev. Stat. § 28-416(5) (Reissue 1979), and his subsequent sentence by the court to 90 days' imprisonment in the Lincoln County jail with credit granted for 22 days the defendant spent in jail following his arrest. The case was tried to the court pursuant to appellant's waiver of trial by jury on November 7, 1979. We affirm.

His principal assignment of error on appeal to this court is that the District Court erred in overruling his motion to suppress evidence seized pursuant to a federal search warrant, which appellant contends was not issued pursuant to probable cause to believe that the property described in the warrant was in the residence to be searched at the time the warrant was issued. He further contends that the magistrate who signed the federal search warrant was unable to make an independent determination that probable cause existed to believe that the evidence described in the warrant was in the residence to be searched at the time the warrant was issued. He also assigns as error that the State failed to prove beyond a reasonable doubt at the trial that the appellant was guilty of possession of marijuana, and also that the evidence was insufficient

to establish that appellant was in control of the premises where the marijuana was seized. Finally, he contends that the District Court erred in admitting evidence at the trial, over appellant's objection, with insufficient foundation for the admissibility of such evidence.

By way of factual background, it appears that on July 31, 1979, Agent William H. Petersen, Jr., of the Bureau of Alcohol, Tobacco and Firearms filed an affidavit in the U.S. Magistrate's office in Omaha, Nebraska, for the purpose of obtaining a federal search warrant. In his affidavit, Petersen alleged that at 3:30 a.m. on July 25, 1979, gunshots were heard in the village of Brady, Nebraska. According to Lincoln County Deputy Sheriff Don Knudsen, who heard the shots, they sounded like gunfire from an automatic weapon and he identified the shots as such. Deputy Knudsen based his identification upon his 5 years' experience in the Nebraska National Guard where he had handled automatic firearms in his capacity as an infantryman. The deputy described the shots as coming from the area in town in which the defendant's mobile home was located.

During his investigation of the occurrence, Deputy Knudsen interviewed Mrs. Susie Hoaglund and Mrs. Janet Miesbauer, neighbors of the defendant. Both women informed Officer Knudsen that they had been awakened by the sound of gunfire which came from the direction of the Stickelman residence. They stated that the bursts had occurred in even, rapid succession of about "10 to 12 shots, in which each shot was fired 'before the last one quit echoing.'" In addition, Officer Knudsen stated that he had been told by Delora Stickelman, the defendant's ex-wife, that Stickelman was in possession of an "AR-16" automatic weapon. The defendant's former mother-in-law, Ola Maxine Connelley, was also reported as stating that the defendant had an "Army-type weapon" at his residence.

On July 29, 1979, the defendant was arrested after he barricaded himself inside the house of his former father-in-law. At the time he was arrested, Stickelman was armed with a semi-automatic weapon, which was seized, but no automatic firearm was found at this time.

On July 30, 1979, Agent Petersen was contacted by Deputy Knudsen and Marvin Holscher of the Lincoln County Attorney's office, in order to obtain a warrant to search the premises of a Champion mobile home located on the west 75 feet of Lots 7 through 12, Block 19, in Brady, Lincoln County, Nebraska, for an automatic weapon and other firearms. Agent Petersen ran several checks on defendant's criminal record and was advised that Stickelman had been convicted of a felony in 1977, for which he had been sentenced to 1 year in the Nebraska Penal and Correctional Complex; that as a convicted felon, the defendant had never applied for or been granted relief from disability as it pertains to felons possessing firearms. In this connection, see 26 U.S.C. § 5861(d); and also 18 U.S.C. § 922(h), which makes it unlawful for a person who has been convicted of a crime punishable by imprisonment for a term exceeding 1 year to receive or possess an unregistered firearm.

On the basis of the statements and information set forth in Petersen's affidavit, the magistrate issued the search warrant, and the police executed it on the same day. Entry to the mobile home was made by a key furnished by defendant's ex-wife. Although no automatic weapon was found at the residence, the law enforcement officers found rounds of both live and spent ammunition of various calibers "laying all around the area in the living room." The officers also found marijuana being cultivated in a bedroom, the walls and ceiling of which were lined with aluminum foil, and with plastic on the floor and grow lights hanging from the ceiling. In a spare bedroom, they found a large plastic bag containing approximately 5 pounds of marijuana, and also assorted pills and a scale. Ten growing

marijuana plants were also found in a garden outside the mobile home.

The rule is well established that, in evaluating the showing of probable cause necessary to support a search warrant, only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *State v. Bazis*, 190 Neb. 586, 210 N.W.2d 919 (1973). It is also well established that affidavits for search warrants must be tested and interpreted in a commonsense and realistic fashion; and that where the circumstances are detailed, where reasons for crediting the source of information is given, and when the magistrate has found probable cause to exist, the court should not invalidate the warrant by interpreting the affidavit in a hyper-technical manner. *State v. Payne*, 201 Neb. 665, 271 N.W.2d 350 (1978).

In the present case, the information in the affidavit for the search warrant contained not only the observations made by Deputy Knudsen, but also those made by the defendant's ex-wife and neighbors. On the basis of this information, we believe it is reasonable to conclude that probable cause existed for the belief that the defendant was probably in possession of an automatic weapon or other firearms, and therefore in violation of the federal statutes which prohibit their possession by a convicted felon. In passing on the validity of a search warrant, this court has held that observations by fellow officers engaged in a common investigation are a reliable basis for a warrant and that probable cause is to be evaluated by the collective information of the police as reflected in the affidavit, and is not limited to the firsthand knowledge of the officer who executes the affidavit. *State v. Huggins*, 186 Neb. 704, 185 N.W.2d 849 (1971). With regard to the information obtained by Deputy Knudsen in his interviews with citizen informants, their reports are presumed to be reliable. *State v. Payne, supra.* Considering all the information contained in the affidavit for the search warrant, we

conclude it was sufficient to establish not only the probability of the occurrence of a crime, but also the secreting of evidence on the premises.

The defendant contends, however, that the search warrant issued in this case should be suppressed because it was issued on the basis of a "misleading" affidavit. Specifically, the defendant alleges that the evidence presented at the District Court hearing on his motion to suppress was inaccurate and incomplete, such that the federal magistrate was prevented from making an independent determination as to the issue of probable cause. The defendant challenges the description given by his ex-wife of the weapon he possessed, which was referred to in the affidavit as an "AR-16" automatic weapon. At trial, his wife denied making this statement but admitted that the defendant had been in possession of an "AR-15" semi-automatic weapon. The defendant also challenges the description of the area of town from which Deputy Knudsen heard the gunshots, and claims that the description made was inconsistent with the location of his residence.

In *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), which case has been consistently approved and followed since its issuance, the U.S. Supreme Court ruled that criminal defendants could challenge the validity of search warrants based on affidavits containing statements that were deliberate falsehoods or made with reckless disregard for the truth. The test articulated in *Franks* for determining whether a defendant is entitled to a hearing to examine the contents of the affidavit for a search warrant is three-pronged. First, the challenger is to attack *only* the veracity of the affiant, and not of any other informant. Second, he or she must make a "substantial preliminary showing," including allegations of "deliberate falsehood or a reckless disregard for the truth," supported by an offer of proof. The court stated: "Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless

disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171-72. According to *Franks*, if all three requirements are met, the defendant is entitled to an evidentiary hearing. If, at such hearing, he can establish perjury or reckless disregard, and the "excision of the challenged matter leaves the affidavit with insufficient content to establish probable cause, the warrant must be voided." *United States v. Young Buffalo*, 591 F.2d 506, 509 (9th Cir. 1979).

In discussing the defendant's burden of proof, the Supreme Court in *Franks v. Delaware, supra* at 171, stated: "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. *Allegations of negligence or innocent mistake are insufficient.* The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." (Emphasis supplied.)

The record in this case establishes that on November 6, 1979, a hearing was held before the District Court on the defendant's motion to suppress the evidence seized pursuant to the federal search warrant. It is clear that Stickelman had the burden of establishing the falsehood of the affidavit at the hearing. A perusal of the record of the hearing held in this case makes it clear that the defendant had failed to do so. The state-

ments in the affidavit which the defendant challenged were not those made by the affiant, Agent Petersen, but were those of Stickelman's ex-wife and Deputy Knudsen. The defendant also failed to allege or establish that the challenged information contained in the affidavit was "deliberately false or made in reckless disregard of the truth." Defendant's contention in his brief that the affidavit contained misleading inaccuracies or omissions is not supported under the standards set forth in *Franks v. Delaware, supra.* Finally, we note that in denying the defendant's pretrial motion to suppress, the trial court specifically found that the inaccuracies contained in Peterson's affidavit were not material and held that even without them there was still ample information to support the issuance of the search warrant. The court was correct in overruling the defendant's motion to suppress the evidence and in finding that probable cause existed for the issuance of the federal search warrant.

The defendant also contends that the evidence introduced at trial was insufficient to support the trial court's finding that he was in possession of the marijuana seized from the mobile home. Stickelman maintains that the testimony introduced at trial did not establish that he was in control of the premises where the marijuana was seized. In support of this proposition, the defendant cites *State v. Klutts,* 204 Neb. 616, 284 N.W.2d 415 (1979), in which we held that "[w]here circumstantial evidence is relied upon, the circumstances proven must relate directly to the guilt of the accused beyond all reasonable doubt in such a way as to exclude any other reasonable conclusion." *Id.* at 618, 284 N.W.2d at 417, quoting *State v. Eberhardt,* 176 Neb. 18, 125 N.W.2d 1 (1963). In *State v. Klutts,* the only evidence of the defendant's connection with the searched premises was a police officer's statement that the city directory identified the premises as the defendant's residence. This was held to be hearsay and insufficient proof of

defendant's control of the premises searched.

In the present case, however, testimony of three different sources clearly establishes that the premises searched was the residence of the defendant. First, the defendant's ex-wife, Delora Stickelman, testified that although she did not live with the defendant, she knew that he resided in a Champion mobile home as described in the warrant and as the residence which was searched on July 31, 1979. In addition, she testified that she had provided the law enforcement officers with the key with which they were able to enter the mobile home. Second, Deputy Knudsen and the defendant's neighbors further testified that the trailer searched was the residence of the defendant. Finally, Officer James N. Avery of the Nebraska State Patrol testified that he participated in the search of the premises and had observed telephone bills and other mail addressed to the defendant.

The evidence in this case is more than sufficient to establish the defendant's actual or constructive possession of the marijuana seized at the mobile home. In determining the sufficiency of evidence necessary to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Carter*, 205 Neb. 407, 288 N.W.2d 35 (1980). See, also, *State v. Fowler*, 201 Neb. 647, 271 N.W.2d 341 (1978); *State v. Tiff*, 199 Neb. 519, 260 N.W.2d 296 (1977).

As his final allegation of error, the defendant claims that the trial court erred in admitting certain exhibits at trial because the State failed to establish a complete chain of custody of the marijuana. The defendant cites our decision in *State v. Bobo*, 198 Neb. 551, 253 N.W.2d 857 (1977), as support for the proposition that "objects

which relate to or explain issues or form part of a transaction are admissible only when duly identified and shown to be in substantially the same condition as they were at the time in issue. When objects pass through several hands before being produced in court, it is necessary to establish a complete chain of evidence, tracing possession of the object to the final custodian, and if one link in the chain is missing, the object may not be introduced in evidence." In *State v. Bobo*, a bag of marijuana had been admitted into evidence against the defendant. This court reversed because the State was not able to establish a chain of possession of the bag because the witness had obtained one bag of marijuana from the defendant and another bag from another person, put them both in the same pocket, and was unable to identify which one had come from the defendant.

In the present case, the facts are readily distinguishable from those set out in *State v. Bobo*. The testimony reveals that the marijuana was seized by Agent Petersen who took the exhibits to his motel room in North Platte, Nebraska. The defendant challenges the fact that Agent Petersen kept the evidence in his locked motel room when he left to eat a meal. On August 1, 1979, Agent Petersen delivered the exhibits to Investigators Avery and Ball. However, at trial the two investigators disagreed on the date the exchange was made. Investigator Avery testified that he received the exhibits on August 1, 1979. In any event, the exhibits were then turned over to the State Patrol laboratory, whose chemists tested the substance on August 16, 1979. It appears from the evidence that transfers of the exhibits from Agent Petersen to Investigator Avery, thence to Investigator Ball, and then to the chemists all took place at the State Patrol office in North Platte, Nebraska.

The rule is well established that a trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for a clear

abuse of discretion. See, *State v. Torrence*, 192 Neb. 720, 224 N.W.2d 177 (1974); *State v. Apker*, 204 Neb. 577, 284 N.W.2d 14 (1979). In *State v. Apker*, we held that an exhibit is admissible, so far as identity is concerned, when it has been identified as being the same object about which the testimony was given. It must be shown to the satisfaction of the trial court that no substantial change has taken place in the exhibit so as to render it misleading. As long as the article can be identified, it is immaterial in how many or in whose hands it has been. In the present case, we conclude that the record reflects a continuous chain of custody. Each person having custody identified the objects as the controlled substance that had been seized from the defendant's residence, and also testified that it was in substantially the same condition as when it was received. The method of storing the exhibits eliminated the reasonable likelihood of intermeddlers having tampered with the exhibits. The trial court was correct in finding that there was sufficient foundation to admit the exhibits into evidence, and no abuse of discretion occurred in doing so.

The judgment of the District Court must be affirmed.

AFFIRMED.