STATE OF NEBRASKA, APPELLEE, V.
CHARLES WEIBLE, APPELLANT.
317 N.W.2d 920

Filed April 2, 1982.   No. 81-637.

Vince Kirby, for appellant.

Paul L. Douglas, Attorney General, and Shanler D. Cronk, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and BRODKEY, J., Retired.

CAPORALE, J.

The defendant-appellant, Charles Weible, was

charged in an information filed in the District Court for Wayne County on February 17, 1981, with knowingly and intentionally possessing cocaine with the intent to deliver (count I), possessing marijuana with the intent to deliver (count II), and with possession of cocaine (count III). A trial in this matter was held commencing on June 22, 1981, and the jury found the appellant guilty as charged. Weible was sentenced to terms of 5 to 8 years for possession of cocaine with the intent to deliver; 2 to 5 years for possession of marijuana with the intent to deliver, said sentence to be served consecutively with the sentence imposed in count I; and 1 to 3 years for the possession of cocaine, said sentence to be served concurrent with the sentences imposed in count I and count II.

The appellant's principal assignments of error can be summarized as follows: (1) Whether the complaint filed in the county court was properly amended; (2) Whether the entry of the police into appellant's residence after his arrest was in violation of defendant's constitutional rights; (3) Whether a complete chain of custody of the exhibits seized from the Busskohl residence was established; and (4) Whether the sentences imposed were excessive.

The record reveals that on December 18, 1980, at 10:30 a.m., Officer Robert Wilber, a special agent with the Bureau of Alcohol, Tobacco and Firearms, learned from an informant that one Dale Busskohl was willing to sell a quantity of cocaine and marijuana to Wilber and Officer Randy Brunckhorst, an undercover investigator with the Nebraska State Patrol. The officers made arrangements with the informant to meet with Busskohl at 9:30 p.m. that evening at a cafe located in Norfolk, Nebraska. Upon their arrival at the cafe, Wilber and Brunckhorst were told by Busskohl that he did not have the drugs with him and stated that the officers should contact him at 11:30 p.m. at his residence in Win-

side, Nebraska. It appears that prior to their departure to the Busskohl residence, the officers arranged a surveillance of the purchase of the controlled substances.

At approximately 11:30 p.m., the officers arrived in Winside and went to the Busskohl residence which was occupied by Busskohl, his girl friend, and several small children. At midnight, Busskohl left the residence and returned 20 minutes later with three bags of a white powder which was subsequently identified as cocaine. It appears that the officers had arranged to purchase 4 ounces of cocaine and 50 pounds of marijuana from Busskohl, and they informed him that no payments would be made for the drugs until after the marijuana had arrived. Thereafter, Brunckhorst agreed to drive Busskohl to another residence in Winside so that Busskohl could check to see if the marijuana had arrived. This residence was subsequently identified to be that owned by the appellant. Busskohl entered the house alone for a brief period before returning to Brunckhorst who had remained in the car. The men returned to the Busskohl residence at 12:45 a.m. the early morning of December 19, 1980. At 1 a.m. Busskohl requested another ride to the appellant's house from Brunckhorst, and as they drove by the house they observed the arrival of a pickup truck and two individuals walking toward the Weible house. According to Brunckhorst, Busskohl told him that these men had the marijuana and that the officer was not to stop at the house. The two men returned to the Busskohl residence; however, at 1:15 a.m. Busskohl left the house alone, allegedly to return to appellant's house to check on the drug deal.

Busskohl subsequently returned to his house at 1:40 a.m. in the company of the appellant and one Vernon Sarha. Busskohl and Sarha were carrying large boxes which contained garbage bags filled with blocks of marijuana weighing approximately

50 pounds, and the appellant carried a scale. The marijuana was taken into the kitchen and Busskohl retrieved the three bags of cocaine which he had placed in a bedroom. The officers had $16,000 in cash, which they placed on the kitchen table, and Brunckhorst performed a field test on the cocaine while the marijuana was being weighed. Brunckhorst asked Busskohl if the cocaine was still for sale at $2,400 an ounce, at which time Busskohl turned to the appellant, who nodded his head, whereupon Busskohl answered affirmatively. The total price for the substances in the house was computed to be $23,450; however, the officers informed Busskohl that they did not have enough money to purchase all of the drugs. Upon being informed of this Busskohl, Sarha, and the appellant went into the nearby living room to discuss how the purchase of the drugs was to be made. While the three men were in the living room, Officer Brunckhorst left the kitchen and went outside to his car and signaled to the surveillance team to go into the house. As the police entered into the Busskohl residence, the appellant attempted to escape by running from the house; however, he was apprehended by several officers. Before he could be secured, appellant reached into a pocket and threw a package containing a white powder, subsequently identified as cocaine, under a nearby police van. An additional bag of cocaine and a snorting device was found on the appellant during a search of his person after his arrest.

After the arrest of the appellant at 2 a.m. on the morning of December 19, 1980, Officer Brunckhorst directed several law enforcement agents to secure the Weible house while he proceeded to Wayne, Nebraska, to obtain a search warrant for the premises. The record reveals that the officers sent to the Weible house entered the residence and conducted a protective sweep, examining the rooms to determine whether anyone was in the house. The police found

three individuals at the residence; however, they appeared to have had no connection with the instant drug dealing, and they were allowed to leave. The officers remained in the residence until 4:45 a.m., when Officers Brunckhorst and Wilber returned with the search warrant. The officers contend that they conducted the search of the Weible house after the delivery of the warrant; however, there is testimony on the part of the Wayne County attorney and associate county judge that the search warrant was not delivered to the law enforcement officers until 5 a.m. on December 19, 1980.

In count I and count III of the complaint filed against the appellant in the county court on January 12, 1981, reference is made to cocaine being a controlled substance derived from "cocoa." Upon observing that the word coca had been misspelled in both counts, counsel for the appellant moved that the counts be dismissed. The State, however, made a motion for leave to amend instanter by interlineation to correct the spelling error, which motion was sustained by the court. Thereafter, appellant's counsel moved that the complaint be dismissed for want of reverification, which motion was overruled and which appellant contends was error.

It is well established in this jurisdiction that the court, before trial, may in its discretion permit amendment of a criminal information, provided that the amendment does not change the nature or identity of the offense charged or charge a crime other than the one on which the accused has his preliminary examination. *State v. Costello,* 199 Neb. 43, 256 N.W.2d 97 (1977); *State v. Gascoigen,* 191 Neb. 15, 213 N.W.2d 452 (1973). In the present case, the amendment of the complaint was made for the sole purpose of correcting the misspelling of the word coca. The remainder of the complaint clearly charges the appellant with knowingly and intentionally possessing or possessing with the intent to de-

liver the controlled substance of cocaine. There has been no showing on the part of the appellant that he was in any way prejudiced by the amendment or that it changed the nature of the offense with which he was charged. Rather, the record clearly shows that counsel for appellant admitted he had not been misled by the misspelling appearing in the complaint. We conclude that the correction of the complaint was one of form which did not in any way alter the substance of the offenses with which appellant was charged. See Annot., 17 A.L.R.3d 1181 (1968). The appellant's contention is without merit.

The appellant also contends that the search of his house by the law enforcement agents was unlawful and that the admission of evidence discovered at the time of the search was error.

It is a basic principle of fourth amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable, and that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable unless the police can show that it falls within one of the carefully designated exceptions based on the presence of "exigent circumstances." *Payton v. New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). See, also, *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961); *Wolf v. Colorado,* 338 U.S. 25, 69 S. Ct. 1359, 93 L. Ed. 1782 (1949). However, an arresting officer may search the arrestee's person to discover and remove weapons and to seize evidence to prevent its concealment or destruction, and may also search the area *within the arrestee's immediate control. Chimel v. California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). Absent exigent circumstances, government agents have no right to search a dwelling when the arrest is effectuated outside it. *Vale v. Louisiana,* 399 U.S. 30, 90 S. Ct. 1969, 26 L. Ed. 2d 409 (1970). In *Vale v. Louisiana* at 34-35, the Supreme Court stated: "But

entirely apart from that point, our past decisions make clear that only in 'a few specifically established and well-delineated' situations, *Katz v. United States,* 389 U.S. 347, 357 [88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)], may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it. *The burden rests on the State to show the existence of such an exceptional situation. Chimel v. California, supra,* at 762 [89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)]; *United States v. Jeffers,* 342 U.S. 48, 51 [72 S. Ct. 93, 96 L. Ed. 59 (1951)]; *McDonald v. United States,* 335 U.S. 451, 456 [69 S. Ct. 191, 93 L. Ed. 153 (1948)]. And the record before us discloses none.

"There is no suggestion that anyone consented to the search. Cf. *Zap v. United States,* 328 U.S. 624, 628 [66 S. Ct. 1277, 90 L. Ed. 1477 (1946)]. The officers were not responding to an emergency. *United States v. Jeffers, supra,* at 52; *McDonald v. United States, supra,* at 454. They were not in hot pursuit of a fleeing felon. *Warden v. Hayden,* 387 U.S. 294, 298-299 [87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967)]; *Chapman v. United States,* 365 U.S. 610, 615 [81 S. Ct. 776, 5 L. Ed. 2d 828 (1961)]; *Johnson v. United States,* 333 U.S. 10, 15 [68 S. Ct. 367, 92 L. Ed. 436 (1948)]. The goods ultimately seized were not in the process of destruction. *Schmerber v. California,* 384 U.S. 757, 770-771 [86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966)]; *United States v. Jeffers, supra; McDonald v. United States, supra,* at 455. Nor were they about to be removed from the jurisdiction. *Chapman v. United States, supra; Johnson v. United States, supra; United States v. Jeffers, supra.*" (Emphasis supplied.)

The record clearly demonstrates that the law enforcement agents had arrested the appellant at the Busskohl residence prior to their subsequent entry into his house for the purpose of securing it. The arrest of the appellant did not provide exigent cir-

cumstances justifying the warrantless search of this house. Furthermore, the State has not sustained its burden of establishing the existence of any exceptional circumstances dictating the necessity of the search without a warrant. For these reasons, we must determine that the warrantless protective search of Weible's residence was in violation of the fourth amendment to the U.S. Constitution. See, *United States v. Anthon,* 648 F.2d 669 (10th Cir. 1981); *United States v. Kinney,* 638 F.2d 941 (6th Cir. 1981). The evidence seized as a result of the *search of appellant's residence* should not have been admitted at trial.

However, we determine the admission of the evidence discovered in the search of appellant's residence to have been harmless error beyond a reasonable doubt. The jury's verdict is amply supported by overwhelming evidence which was not tainted by the warrantless search. *Chambers v. Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970), *rehearing denied* 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94; *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *United States v. Russo,* 527 F.2d 1051 (10th Cir. 1975), *cert. denied* 426 U.S. 906, 96 S. Ct. 2226, 48 L. Ed. 2d 831 (1976). The evidence seized at appellant's residence consisted of some drug-use paraphernalia and items used to weigh and cut drugs. These items pale into insignificance when weighed against the evidence which was properly seized at the Busskohl residence at the time of the arrests. The evidence in this case clearly establishes that, at the time of his arrest, the appellant was in possession of several packages of cocaine. Furthermore, the evidence is sufficient to establish that Weible was in actual or constructive possession of the marijuana and cocaine which was offered for sale to the law enforcement agents. In this regard, we note the testimony of Vernon Sarha who stated that he received several phone calls from the appel-

lant on December 18, 1980, and was told to bring 50 pounds of marijuana that evening to Weible's house at Winside. In determining the sufficiency of evidence necessary to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Stickelman,* 207 Neb. 429, 299 N.W.2d 520 (1980); *State v. Carter,* 205 Neb. 407, 288 N.W.2d 35 (1980).

The appellant also objects to the admission of the evidence by the trial court for the reasons that the State failed to establish a proper foundation and chain of custody. In *State v. Apker,* 204 Neb. 577, 284 N.W.2d 14 (1979), we held that an exhibit is admissible, so far as identity is concerned, when it has been identified as being the same object about which the testimony was given. It must also be shown to the satisfaction of the trial court that no substantial change has taken place in the exhibit so as to render it misleading. As long as the article can be identified, it is immaterial in how many or in whose hands it has been. We have carefully examined the testimony of Officer Brunckhorst who took possession of the evidence seized at the Busskohl home. He testified that the evidence was tagged and marked by him while at the Busskohl home, and then placed into the police van under the custody of Officer Pettijohn. Pettijohn testified that he maintained custody of the evidence until it was returned to Brunckhorst after the search of the appellant's house. Thereafter, Brunckhorst took the evidence to Omaha to be placed into storage at the State Patrol evidence locker. Darrell Koci, custodian of the evidence locker, testified that he stored the evidence received from Brunckhorst on December 19, 1980.

The evidence was subsequently checked out of the evidence locker on several occasions by Officer Brunckhorst, once to be consolidated with the evidence seized from the Weible house, and at other times to be taken to chemical laboratories for analysis. We are satisfied that the testimony of the witnesses into whose hands the evidence passed clearly identified the evidence and established a continuous chain of custody from the time it had been seized. The method of storing the evidence eliminated any reasonable likelihood that it had been tampered with by intermeddlers. The rule is well established that a trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for a clear abuse of discretion. *State v. Torrence,* 192 Neb. 720, 224 N.W.2d 177 (1974); *State v. Stickelman, supra.* The court did not err in finding that there was sufficient foundation to admit the exhibits into evidence.

Finally, we turn to appellant's allegation that the sentences imposed by the trial court were excessive. In support of his contention, appellant compares his sentences to those imposed on Busskohl, Sarha, and Coyle as evidence of an abuse of discretion by the trial court. After a review of the records and sentences imposed on the codefendants, we are unable to agree with the appellant that the trial judge abused his discretion. The record indicates that the appellant was the organizer in the drug transaction which led to his arrest, and he coordinated the sale of the cocaine and marijuana to the undercover investigators. Busskohl was charged with possession of cocaine with the intent to deliver and with possession of marijuana with the intent to deliver. Pursuant to a plea bargain, the second of the two charges was dropped and he pled guilty to possessing cocaine with the intent to deliver. He was sentenced to a term of 2 to 5 years' imprisonment. Coyle was originally charged with possession of

marijuana of less than one ounce, possession of marijuana with the intent to deliver, and possession of cocaine with the intent to deliver. The record indicates that the third count was dismissed after the county court preliminary hearing and the second count was dismissed on motion of the State for lack of evidence. Coyle pled guilty to possession of marijuana and was fined $100. Sarha was charged with possession of marijuana with intent to deliver, which was amended to possession of more than 1 pound of marijuana, to which he pled guilty. The record indicates that Sarha cooperated with the law enforcement officials during the appellant's trial. Sarha was sentenced to imprisonment in the Pierce County jail for 300 days.

The record of the trial court at the time of sentencing the appellant clearly shows that the court considered the many factors for determining the degree of punishment to be imposed which this court outlined in *State v. Etchison,* 188 Neb. 134, 195 N.W.2d 498 (1972). Our conclusion is that the sentences imposed on the appellant were not excessive and the court did not abuse its discretion.

We have considered appellant's other assignments of error and find them likewise to be without merit. The jury's verdict and the judgment and sentences of the trial court are affirmed.

AFFIRMED.