STATE OF NEBRASKA, APPELLEE, V. MICHAEL E. DEGROAT,
APPELLANT.
508 N.W.2d 861

Filed December 17, 1993.    No. S-93-239.

Thomas M. Kenney, Douglas County Public Defender, and Janine F. Ucchino for appellant.

Don Stenberg, Attorney General, and Joseph P. Loudon for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

CAPORALE, J.

Following a bench trial, the defendant-appellant, Michael E. DeGroat, was adjudged guilty of the unlawful possession of a controlled substance, lysergic acid diethylamide (LSD), a felony, in violation of Neb. Rev. Stat. §§ 28-416(3) and 28-405(c)(9) [Schedule I] (Cum. Supp. 1992). Asserting that his warrantless arrest was unlawful, DeGroat appealed to the Nebraska Court of Appeals and assigned as error the district court's failure to suppress the physical evidence seized at the time of his arrest and the statement he later made to the police. Under the power granted us by Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 1992) to regulate the caseload of this court and that of the Court of Appeals, we removed the appeal to this court. We now affirm the judgment of the district court.

While on bicycle patrol, Officers Jeff S. Saalfeld and Daniel L. Clark of the Omaha Police Division saw a pickup truck being operated on an Omaha street. Three people were seated in the cab of the truck, which was equipped with bucket seats, and at least two persons were riding in the bed of the truck.

The truck halted in a traffic lane, where people began to get out of the bed of the truck; as a result, other vehicles had to drive around the truck. Because the people in the bed had been seen to have been drinking and the truck was obstructing traffic, the officers approached it to make a "traffic stop." In the meantime, the truck had begun to move, so when Saalfeld reached it, he announced, "Omaha police officer." The driver,

later determined to be DeGroat, the owner of the vehicle, then stopped.

Clark went to the driver's side, and Saalfeld to the passenger's side. Although the timing is not entirely clear, it appears from the testimony at the suppression hearing that as Clark began to ask DeGroat for his driver's license and proof of ownership, Saalfeld saw the middle passenger reach behind the driver's bucket seat with her left hand, completely turning her torso to the back of the cab in the process. However, at the trial, Saalfeld testified he saw this passenger reach behind DeGroat with her left hand and place something on a tray or ledge running along the back of the cab. In any event, Saalfeld recognized the passenger as being Tina Gomez, a woman whom he had encountered in his official capacity on prior occasions. At the suppression hearing, Saalfeld testified that Gomez' actions attracted his attention because people often attempt to hide guns or contraband, that he had previously seen such furtive gestures made by occupants of an automobile, and that based on those observations, he had, on hundreds of occasions, found weapons or contraband. He further testified that he was most concerned that Gomez might have hidden a weapon.

Immediately upon seeing Gomez reach behind the driver's seat, the officers had DeGroat and his two passengers get out of the truck. Saalfeld looked into the truck to see where Gomez had reached and saw on the ledge in the back of the cab a small, clear receptacle with a material inside which, as a result of his training and experience, he suspected to be LSD. After checking his suspicions by picking up the container, Saalfeld placed DeGroat and Gomez under arrest.

A police cruiser was called to transport DeGroat to central police headquarters, where he was interviewed by Clark. After waiving his *Miranda* rights, DeGroat admitted that the LSD was his. Later chemical testing established that the container indeed held LSD.

With respect to the search, it must be borne in mind that the validity of DeGroat's vehicle being approached and stopped by the police is not at issue. Inasmuch as roadside encounters between police and suspects present especially dangerous situations, the police may search those parts of the passenger

compartment of a vehicle they have properly stopped where a weapon may be hidden on the reasonable belief that a suspect is dangerous and may gain access to a weapon. *State v. Pierce and Wells*, 215 Neb. 512, 340 N.W.2d 122 (1983). Gomez' reaching back to the ledge provided the police with a reasonable belief that she might gain access to a weapon and thus be dangerous. Consequently, the district court did not err in refusing to suppress the physical evidence seized as a result of the search of the truck.

In regard to his postarrest statement to the police, DeGroat argues, in essence, that his arrest was unlawful and that as a result, the statement developed as a consequence of the arrest was inadmissible under the "fruit of the poisonous tree" doctrine announced in *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). See, also, *Brown v. Illinois*, 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); *State v. Tingle*, 239 Neb. 558, 477 N.W.2d 544 (1991).

The protection U.S. Const. amend. IV affords against unreasonable seizures is made applicable to the states through the Due Process Clause of U.S. Const. amend. XIV, see *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961), and is further guaranteed to the citizens of Nebraska through Neb. Const. art. I, § 7. Accordingly, Neb. Rev. Stat. § 29-404.02 (Reissue 1989) empowers a peace officer, so far as is relevant here, to "arrest a person without a warrant" only if "the officer has reasonable cause to believe that such person has committed . . . [a] felony."

We have declared that reasonable cause to arrest without a warrant exists when a law enforcement officer has knowledge, based on information which is reasonably trustworthy under the circumstances, which justifies the officer's prudent belief that a suspect is committing, or has committed, a crime. *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993). The same concept has been expressed in the declaration that if the facts available at the time of the arrest would justify a person of reasonable caution to believe that an offense has been or is being committed, probable cause exists. *State v. Roggenkamp*, 224 Neb. 914, 402 N.W.2d 682 (1987). The determination of whether there exists probable cause to arrest without a warrant

rests on a practical, rather than a technical, concept. See *State v. McDonald*, 195 Neb. 625, 240 N.W.2d 8 (1976). Thus, probable cause sufficient to justify an arrest does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. *State v. Brewer*, 190 Neb. 667, 212 N.W.2d 90 (1973).

Before proceeding further, it is appropriate to recall that an appellate court will uphold a trial court's ruling on a motion to suppress unless its findings of fact are clearly erroneous. *State v. Harris, ante* p. 289, 505 N.W.2d 724 (1993). Moreover, in determining whether a trial court's findings on such a motion are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Johnson*, 242 Neb. 924, 497 N.W.2d 28 (1993). Expressed another way, the rule is that in determining the correctness of a trial court's ruling on a suppression motion, an appellate court will accept the factual determinations and credibility choices made by the trial court unless, in light of all the circumstances, such findings are clearly erroneous. *State v. Strickland*, 209 Neb. 133, 306 N.W.2d 600 (1981).

Whether the district court found that Saalfeld saw Gomez place something on the ledge behind DeGroat's seat or merely saw her reach there is unimportant, for although there are other inferences, either finding supports a conclusion that the container had been resting on the ledge and its presence was being confirmed, or that the container was being returned to its usual location.

One possesses a controlled substance when one knows of the nature or character of the substance and of its presence and has dominion or control over it. *State v. Farrell*, 242 Neb. 877, 497 N.W.2d 17 (1993). A defendant's control or dominion over the premises at which contraband is located may establish the defendant's constructive possession of it. *State v. Lonnecker*, 237 Neb. 207, 465 N.W.2d 737 (1991). In *State v. Woodruff*, 205 Neb. 638, 288 N.W.2d 754 (1980), we wrote more specifically that constructive possession of a controlled substance may be proved by direct or circumstantial evidence and may be shown

by an accused's proximity to the substance at the time of the arrest or by a showing of ownership, dominion, and right of control over the automobile in which the contraband was found. The defendant therein, in an effort to avoid arrest on an unrelated warrant, lay down in the backseat of an automobile he owned, and a woman drove it away. An inventory search of the automobile after the defendant and woman were apprehended revealed the presence of a controlled substance in a box located partially under the driver's seat and partially on the floor behind the seat, and the defendant's jacket lying across the rear of the backseat held a syringe needle and a note listing dates and amounts. We held the evidence sufficient to support the defendant's conviction for possession of the controlled substance.

In the course of holding in *State v. Rys*, 186 Neb. 341, 183 N.W.2d 253 (1971), that the evidence was sufficient to sustain the conviction of the minor owner-driver of a vehicle for unlawfully possessing alcohol, we wrote that "[o]rdinarily, when liquor, narcotics, or contraband materials are found on a defendant's premises or in an automobile possessed and operated by him, the evidence of unlawful possession is deemed sufficient to sustain a conviction in the absence of any other reasonable explanation for its presence." *Id*. at 346, 183 N.W.2d at 256. The evidence in *Rys* was that when the defendant's vehicle was stopped, the defendant immediately approached the marshal and offered for inspection a title to the automobile and, on request, displayed his driver's license. Desiring further verification of ownership, the marshal ordered the passengers out of the automobile and, upon opening a door, saw a bottle of whiskey on the right-hand side of the floor in the front seat area.

We have since come to recognize that requiring a defendant to explain the presence of contraband is inconsistent with the presumption of innocence and substitutes the lack or absence of an explanation by a defendant as proof in place of the State's requisite proof on the element of possession. *State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991). We have thus disapproved an instruction which told a jury that " 'in the absence of any other reasonable explanation for its presence,' "

possession of a controlled substance could be shown by evidence that it was found in an automobile possessed and operated by the defendant. *Id.* at 513, 466 N.W.2d at 543. But here, we are not dealing with proof at trial; while DeGroat may not have had any obligation to explain the presence of the LSD to the police, the police were free to act upon the only information they had in making the arrest. The unexplained presence of an unlawful substance in plain view and in close proximity to the driver of an automobile gives rise to probable cause for arresting the driver for possession of the substance.

DeGroat's reliance upon *Rogers v. State*, 586 So. 2d 1148 (Fla. App. 1991), for his argument to the contrary is misplaced. Therein, the police stopped a vehicle after an informant had told them that the defendant driver, whom the police found had twice before been arrested for narcotics violations, would go to a particular place to have cocaine placed in compartments behind the front seats of his vehicle. A search of the vehicle resulted in the finding of cocaine in a pocket attached to the back of the front passenger's seat. After the driver was arrested, the police searched a passenger's purse and found it also contained cocaine. The *Rogers* court ruled the arrest of the driver to have been valid but the arrest of the passenger to have been invalid. First of all, DeGroat seems to overlook that the arrest of the *Rogers* driver was upheld. As to the *Rogers* passenger, the obvious distinction is that neither the cocaine in the automobile nor the cocaine in her purse was in plain view. As she was not the driver of the automobile, she could not be said to have had dominion and control over the vehicle and, therefore, could not be said to have had constructive possession of its contents.

The police having had probable cause to effect a warrantless arrest of DeGroat, the district court did not err in failing to suppress DeGroat's postarrest admission that the LSD was his.

AFFIRMED.