STATE OF NEBRASKA, APPELLEE, V. MICHAEL A. MARSHALL,
APPELLANT.
529 N.W.2d 83

Filed March 7, 1995. No. A-94-449.

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and James A. Elworth for appellee.

IRWIN and MILLER-LERMAN, Judges, and HOWARD, District Judge, Retired.

IRWIN, Judge.

## I. STATEMENT OF THE CASE

Appellant, Michael A. Marshall, argues that evidence used to convict him was obtained from his home pursuant to an invalid search warrant. His motion to suppress physical evidence and statements was denied. He appeals his conviction for possession with intent to manufacture, distribute, deliver, or dispense base cocaine (crack) in a quantity of less than 10 grams, a violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1994). This crime is a Class II felony and is punishable by 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 1989). Marshall was sentenced to serve a term of imprisonment of 4 to 8 years.

## II. ASSIGNMENTS OF ERROR

Marshall claims that the district court erred in (1) failing to suppress evidence obtained as a result of an invalid search warrant because (a) the informant's reliability was not established and (b) there were omissions of material fact and (2) prohibiting Marshall from questioning a police officer at the suppression hearing about the amount of money paid to a

confidential informant whose information was used in the search warrant.

### III. STANDARD OF REVIEW

 In determining the correctness of a trial court's ruling on a suppression motion, an appellate court will accept the factual determinations and credibility choices made by the trial court unless, in light of all the circumstances, such findings are clearly erroneous. *State v. DeGroat*, 244 Neb. 764, 508 N.W.2d 861 (1993); *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994).

 The duty of the reviewing court is to ensure that the judge issuing a search warrant had a substantial basis for determining that probable cause existed. *Grimes, supra.*

 A search pursuant to a warrant is presumed to be valid. *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994). In determining the sufficiency of an affidavit used to obtain a search warrant, Nebraska has adopted the "totality of the circumstances" test formulated by the U.S. Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). See *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992). According to this test, the issuing judge must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.*

### IV. FACTUAL BACKGROUND

At approximately 11 p.m. on September 27, 1993, officers of the Omaha police narcotics unit, together with members of the emergency response unit, executed a search warrant at 1816 North 32d Street, Omaha, Nebraska. Present in the residence

were several adults and two children. Marshall and a female codefendant were found in the basement of the residence, which appeared to be used as a separate living area. It contained a living room area with appropriate furniture and appliances, such as televisions and a stereo. Also in the basement was a bedroom area with dressers and a bed. A search of the basement disclosed the presence of 3 grams of crack cocaine concealed underneath the carpet and another one-half gram of crack cocaine in a plastic bag lying on top of one of the appliances. A physical search of Marshall revealed $1,530 contained in his right front pants pocket and an additional $421 in his left front pants pocket. Some of the other items revealed in the search were 2 mobile phones, 2 digital pagers, 35 rounds of 9-mm ammunition, and 4 venue items relating to Marshall. Marshall was subsequently arrested, and after being advised of his *Miranda* rights, he gave a statement admitting that the cocaine was his, stating, " 'It's mine, all mine.' " When questioned about the money found on his person, he denied that it was revenue from drug sales. During the interview, Marshall stated that his sole source of income was approximately $400 in monthly disability benefits.

The warrant which the officers executed authorized the search for cocaine; instruments for administering cocaine; and venue items such as keys, moneys, and records. The sworn affidavit executed by the two police officers obtaining the search warrant stated in relevant part:

> The complaint and affidavit of [the police officers], on this 27th day of September 1993, who, being first duly sworn, upon oath says [sic]:

> That he has [sic] just and reasonable grounds to believe, and does believe that there is concealed or kept as hereinafter described, the following property, to-wit: Cocaine, its' [sic] derivatives, all administering instruments whether homemade or manufactured. Venue items such as keys that would identify the person in control of 1816 N. 32 Street, Omaha, Douglas County, Nebraska. Also, monies and records used to conduct an illegal narcotics operation.

> . . . .

That the following are the grounds for issuance of a search warrant for said property and the reasons for his [sic] belief, to-wit: On Monday, 27 September 1993, affiant officers were contacted by a confidential reliable informant, in the early evening hours of today's date. In speaking with the C/I, the C/I informed affiant officers of a cocaine distribution operation eminating [sic] out of the address of 1816 N. 32 Street, Omaha, Nebraska. C/I advised affiant officers that he/she had observed a black female party known to the C/I as [codefendant's name]. The C/I further stated that [codefendant] is the resident of 1816 N. 32 Street. C/I stated that he/she had ocassion [sic] to be inside the above forementioned address within the last 24 hours. The C/I stated while inside the residence, he/she had observed [codefendant] possessing an amount of crack cocaine. The C/I stated he/she had observed [codefendant] sell a quantity of crack cocaine to an unidentified individual inside the residence within the last 24 hours. C/I further stated that he/she overheard [codefendant] indicate that she has additional amounts of crack cocaine and that she would be selling the crack cocaine from inside the residence into the late night hours.

The C/I that provided the information to affiant officers has provided reliable information to affiant officers and other officers to [sic] the Omaha Police Narcotics Unit which has resulted in the issuance of numerous narcotics related search warrants during which time crack cocaine has been seized and arrest [sic] made.

Based on the C/I's information, numerous convictions have been obtained on crack charges in Douglas County District Court. The C/I has made numerous controlled purchases of crack cocaine under the direct supervision of Narcotics Officers. The purchases did field test positive for crack. The C/I is under no terms of probation, parole or work release.

A warrant authorizing a night-time search is requested because [t]his information was received during the late evening hours of today's date and affiant officers are working as quickly as possible so as to prevent the

complete dispersal of the evidence.

That a No Knock Search Warrant is requested because . . . [i]f officers were required to announce their presence or purpose, the evidence being sought could easily be destroyed by flushing it down the toilet, sink and/or by swallowing it.

Marshall maintains that the search warrant was invalid because (1) the affidavit supporting it failed to detail any independent investigation which would establish the reliability of the informant and (2) the affidavit contained material omissions of fact. Based upon these reasons, he filed his motion to suppress all evidence seized and statements made as a result of the search. In addition to these two issues, Marshall maintains that the district court erred in sustaining the State's objection to questions concerning the amount of money paid to the confidential informant.

## V. ANALYSIS

### 1. VALIDITY OF WARRANT

#### (a) Proof of Reliability of Affiant

Marshall argues that the search warrant was invalid because the affidavit in support of the search warrant did not establish the reliability of the confidential informant. Marshall appropriately cites *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992), for the proposition that to credit a confidential source's information in making a probable cause determination, the affidavit should give rise to an inference that the source was trustworthy and that the source's accusation of criminal activity was made on the basis of information obtained in a reliable way.

When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the search warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. See *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677

(1984).

The *Utterback* court stated that the reliability of an informant may be established by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given.

In the present case, the police officers' affidavit to obtain the search warrant contains an averment that the informant had given reliable information in the past. The affidavit, as previously quoted, contained information that the informant had given reliable information in the past to the Omaha police and that this information had resulted in "numerous" convictions. No evidence in the record refutes this in any way.

■ It is widely recognized that an affidavit reciting that an undisclosed informant had given reliable information to the police in the past is sufficient to establish reliability for the purposes of issuing a search warrant. See, *United States v. Hunley*, 567 F.2d 822 (8th Cir. 1977); *United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985); *State v. Hoxsworth*, 218 Neb. 647, 358 N.W.2d 208 (1984).

We find that the affidavit executed in support of the search warrant contained, on its face, sufficient information to establish the reliability of the informant. However, since Marshall also assigns as error that there were omissions of material facts, we must examine that argument, set out below, before making a final determination as to the validity of the warrant.

### (b) Material Omissions in the Affidavit

In his second attack on the search warrant, Marshall claims that since there were material omissions in the affidavit offered in support of the search warrant, i.e., that the informant was paid and the amount of such payment, the warrant is invalid.

Probable cause determinations are to be made by reviewing the "totality of the circumstances" set forth in the affidavit. *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527

(1983). The concept of probable cause is a fluid one. As stated in *Stanert*, 762 F.2d at 778-79, the role of the issuing judge regarding probable cause is

"simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

An appellate court will not reverse such a conclusion unless the decision is clearly erroneous. *State v. DeGroat*, 244 Neb. 764, 508 N.W.2d 861 (1993); *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993).

In *State v. Sims*, 216 Neb. 569, 572-73, 344 N.W.2d 645, 647 (1984), the Nebraska Supreme Court wrote:

In *State v. Stickelman*, 207 Neb. 429, 435, 299 N.W.2d 520, 524 (1980) (quoting *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)), we stated that there is " 'a presumption of validity with respect to the affidavit supporting the search warrant. . . .' " In order to overcome this presumption the defendant bears the burden of demonstrating that the affidavit was false. *State v. Stickelman, supra. Franks v. Delaware, supra*, indicates that in order to invalidate a warrant it must be shown that the affiant made a deliberate falsehood or acted with reckless disregard for the truth, and it must be demonstrated that the challenged material is "material" or necessary to a finding of probable cause. *United States v. Young Buffalo*, 591 F.2d 506 (9th Cir. 1979), *cert. denied* 441 U.S. 950, 99 S. Ct. 2178, 60 L. Ed. 2d 1055.

While the above-quoted language from *Sims* applied to false statements, *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992), established that this language is applicable to situations involving omissions from affidavits as well. See, also, *United States v. Reivich*, 793 F.2d 957 (8th Cir. 1986); *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980). Defendants who allege that warrant affidavits contain material falsehoods or omissions must establish that the challenged information contained in the affidavit was deliberately false or

made in reckless disregard of the truth or that the information was omitted intentionally or deliberately. Negligent or innocent mistakes are not sufficient to support such a challenge. See *State v. Stickelman*, 207 Neb. 429, 299 N.W.2d 520 (1980). Marshall argues that the warrant affidavit contains material omissions that negate its facial showing of probable cause. See, *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); *Utterback, supra.*

Marshall's argument ignores the requirement that omissions in warrant affidavits necessitate suppression of evidence only when they occur intentionally or recklessly. In Nebraska, to invalidate a search warrant on grounds that the supporting affidavit contains material falsehoods or omissions, the defendant bears the burden of showing that the affiant omitted facts with the intent to make the affidavit misleading or in reckless disregard of whether such omissions made the affidavit misleading. See, *Reivich, supra*; *State v. Jolitz*, 231 Neb. 254, 435 N.W.2d 907 (1989); *State v. Cullen*, 231 Neb. 57, 434 N.W.2d 546 (1989); *State v. Hodge and Carpenter*, 225 Neb. 94, 402 N.W.2d 867 (1987).

Our independent review of the record leads us to conclude that Marshall failed to show that the affiants even had knowledge at the time of the affidavit's creation that the informant was paid. He therefore has not shown that this omission was done intentionally or with a reckless disregard for the truth. The only salient testimony contained in the 48-page suppression hearing record is set forth below. Only one of the two affiant officers was called as a witness. The following exchanges occurred during cross-examination of the witness:

Q. Are you the officer that's worked with this confidential informant in the past?

A. Yes.

. . . .

Q. . . . . The confidential informant [was] paid by the Omaha Police Department?

A. Yes.

Q. How much is the confidential informant paid?

[Prosecutor]: Objection: relevance.

THE COURT: I'll sustain the objection.

. . . .

Q. . . . Was the information that the confidential informant was paid for included in your—in your Affidavit for the Search Warrant?

A. Did we identify the confidential informant as being a paid informant?

Q. Yes.

A. Not in the Affidavit, no.

Q. I'd ask again: How much was the confidential informant paid?

[Prosecutor]: Again, I'll object. It's irrelevant.

THE COURT: Again, I'll rule it's irrelevant. The objection's sustained.

. . . .

Q. . . . The information that the confidential informant provided you in the past was provided on a paid—paid-for basis; is that correct, Officer?

A. Not at all times, no.

Q. Confidential informants had been paid by you in the past for information; is that correct?

A. Yes.

. . . .

Q. Of—Of the information gathered that led to warrants, what percentage would you say led to arrests?

A. I would say probably almost a 100%.

Q. You said this confidential informant was paid. Is that correct?

A. It was, but—If you're—If you're asking me if the confidential informant we've utilized in the past has been paid in the past, yes.

. . . .

Q. . . . Is the individual paid before or after the information is given?

A. Generally afterwards, but that doesn't—that isn't a rule of thumb.

Therefore, regarding this assigned error, we find the warrant to have been based on an affidavit which did establish the reliability of the informant by showing that the informant gave reliable information to the police in the past, and Marshall

failed to show that the affidavit contained intentional or reckless omissions. This assignment of error is without merit.

## 2. AMOUNT OF MONEY PAID TO INFORMANT

Given our resolution of the above assigned error, it serves no recognized purpose to discuss the district court's evidentiary ruling regarding the question of how much the informant was paid. Even were we to assume arguendo that such evidence was material, since Marshall has failed in his burden of proving that the information omitted from the affidavit was omitted intentionally or recklessly, the district court was correct in denying his motion to suppress.

## VI. CONCLUSION

The decision of the trial court denying the motion to suppress was not clearly erroneous and is therefore affirmed.

AFFIRMED.