STATE OF NEBRASKA, APPELLEE, V. SALOMON C. FLORES,
APPELLANT.

512 N.W.2d 128

Filed February 11, 1994.    No. S-93-373.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Don Stenberg, Attorney General, and James A. Elworth for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

PER CURIAM.

The defendant, Salomon C. Flores, appeals his conviction of possession of a controlled substance with intent to distribute. He assigns as error that the district court erred in (1) overruling his motion to suppress, (2) admitting evidence concerning certain alleged sales of cocaine, and (3) admitting testimony contrary to Neb. Rev. Stat. § 29-2262.01 (Reissue 1989). We reverse and remand for further proceedings.

Pursuant to a search warrant, Investigator Chris Rea of the Hall County Sheriff's Department and Investigator Michael Riley of the Nebraska State Patrol searched apartment No. 317 of the Blackstone Apartments in Grand Island, Nebraska, on December 10, 1992. Present in the apartment at the time of the search were Lisa Hank and a male, later identified as Salomon Flores. During the search, Rea found a bag underneath a sink in that apartment, which appeared to contain about an ounce of cocaine. This substance was identified as exhibit 2. Chemist Randy Pendleton of the Nebraska State Patrol stated that he had tested exhibit 2 and found it to be 27.04 grams, slightly less than an ounce, of cocaine. Riley testified that one-eighth of an ounce of cocaine, normally referred to as an "eight-ball," would sell on the street for anywhere from $200 to $300.

Riley also testified that $830 in currency was found in the apartment. Some additional cash was taken from the right front pocket of the defendant; the remaining currency was found with the cocaine under the bathroom sink. Riley stated that $160 of the currency found in the apartment matched photostatic copies of currency which he had given to a confidential informant earlier on December 10 for the purchase of cocaine. Some of this currency—a $20 bill, which matched one of the $20 bills given by Riley to the confidential informant, and several $1 bills—was found on the defendant.

Flores was charged by information with violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1992), possession of cocaine with intent to distribute. Prior to trial, the defense filed a motion to suppress the fruits of the search and seizure. The motion was overruled on February 26, 1993, and the defendant

was convicted of the charge following a jury trial on March 16, 1993, from which he appeals.

The defendant first contends that the search was conducted pursuant to an invalid warrant and a supporting affidavit which failed to establish probable cause, and that the court therefore erred in overruling the motion to suppress.

In determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold the trial court's factual findings unless those findings are clearly erroneous. *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993); *State v. Stott*, 243 Neb. 967, 503 N.W.2d 822 (1993).

A search warrant, to be valid, must be supported by an affidavit establishing probable cause, or reasonable suspicion founded on articulable facts. *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992); *State v. Armendariz*, 234 Neb. 170, 449 N.W.2d 555 (1989).

In evaluating a showing of probable cause necessary to support issuance of a warrant, only probability and not prima facie evidence of criminal activity is required. Probable cause is reasonable suspicion founded on articulable facts. *Id*.

In determining the sufficiency of an affidavit to show probable cause for the issuance of a warrant, we must look to the totality of the circumstances. This means that if the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, indicate there is a fair probability that evidence of a crime may be found at the place described, the affidavit is sufficient. *Id*.

Probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge. *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

A search pursuant to a warrant is presumed to be valid. *State v. Vrtiska*, 225 Neb. 454, 406 N.W.2d 114 (1987); *State v. Bartlett*, 199 Neb. 471, 259 N.W.2d 917 (1977).

If police have acted pursuant to a search warrant, the defendant bears the burden of proof that the search or seizure is unreasonable. *State v. Vrtiska, supra*.

In his motion to suppress, the defendant moved the court to

suppress the fruits of the search and seizure for the reason that "the search and seizure were made without probable cause or without benefit of a warrant and were unreasonable within the meaning of the 4th Amendment to the United States Constitution and Article I, Section 7 of the Constitution of Nebraska."

The State first argues that the defendant was required in his motion to make an initial showing of sufficient facts regarding the alleged illegality, and contends that the defendant did not carry this burden in his "boilerplate" motion. Citing *State v. Williams*, 214 Neb. 923, 336 N.W.2d 605 (1983), the State asserts that a defendant is required to demonstrate that problems with an affidavit are of a particular, specific nature. In *Williams*, the defendant challenged the validity of the supporting affidavit upon which the arrest warrant was issued. We noted that in *Franks v. Delaware, supra*, the Supreme Court held that

> a criminal defendant may challenge the validity of a search warrant based on an affidavit only if the affidavit contains deliberate falsehoods or statements made with a reckless disregard for the truth. In order to be entitled to a hearing to examine the contents of the affidavit, the challenger must attack only the veracity of the affiant and not of any other informant; he must also make a "substantial preliminary showing," including allegations of "deliberate falsehood or of reckless disregard for the truth," supported by an offer of proof. *Id.* at 171. Moreover, even if the foregoing two requirements are met, no hearing is required if, when the material which is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause.

*Williams*, 214 Neb. at 926, 336 N.W.2d at 607.

However, the defendant does not contend that the affidavit is untruthful or factually inaccurate, but, rather, that it is insufficient to support a finding of probable cause. The motion to suppress filed in *Franks* "alleged that the warrant on its face did not show probable cause and that the search and seizure were in violation of the Fourth and Fourteenth Amendments."

438 U.S. at 157-58. *Franks* suggests that "a magistrate's determination is presently subject to review before trial as to *sufficiency* without any undue interference with the dignity of the magistrate's function." (Emphasis in original.) 438 U.S. at 169-70. In other words, as we read *Franks*, even if there is no question as to the accuracy of the facts alleged, it is not necessary to specify the items that are missing in order for a defendant to challenge the affidavit as insufficient to establish probable cause.

In both *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992), and *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991), we addressed the sufficiency of an affidavit in establishing probable cause for issuance of a search warrant unrelated to the veracity of the *affiant* and therefore outside the scope of the *Franks* analysis. In *Groves*, the defendant alleged that "the affidavit was insufficient because the reliability of the informant was not established by the affidavit." 239 Neb. at 665, 477 N.W.2d at 794. In *Utterback*, the defendant argued that the search warrant was invalid because "the affidavit failed to establish the veracity of the confidential informant." 240 Neb. at 987, 485 N.W.2d at 768. In each of these cases, we noted that in order to determine the *sufficiency* of an affidavit used to obtain a search warrant, this jurisdiction has adopted the "totality of the circumstances" test as set forth by the U.S. Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). The issuing magistrate must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Utterback, supra*; *State v. Groves, supra*.

In addressing the sufficiency of the affidavit in this case, we note that it states that the affiant is Trooper M.T. Riley, an employee of the Nebraska State Patrol for 19 years, who has been trained in the identification of controlled substances and investigative techniques. The affidavit further states, in pertinent part:

Affiant has received numerous intelligence reports from the Grand Island Police Department and Hall County Sheriff's Office that a subject [known] as "Carpo" is heavily involved in the sale of cocaine. Intelligence information indicates this subject's true identify [sic] to be Salomon Flores residing at the Blackstone Apartments, #317, Grand Island, Nebraska. The address of the Blackstone Apartments is 319 South Walnut.

Ron York from the State Probation Office advised affiant Lisa Hanks [sic] resides at the Blackstone Apartments, #317, with an individual known as "Carpo". York advised affiant Lisa Hanks [sic] had stated "Carpo" sells cocaine from the apartment.

Affiant had cooperating individual make an undercover purchase of cocaine from the subject on December 5, 1992. The subject was kept under surveillance and followed to the Blackstone Apartments. Subject stated to CI he was obtaining it from "Carpo" who resided at the Blackstone Apartments. Subject delivered to the CI 1/8 ounce of cocaine. The cocaine was field tested by affiant, field tested positive for cocaine. On December 5, 1992, subject stated to CI he had seen test tubes and the subjects were bringing the cocaine from California.

On December 8, 1992, the CI contacted the subject again. Subject was kept under surveillance and followed to the Blackstone Apartments. Subject delivered to the CI 1/8 ounce of cocaine. The cocaine was field tested by affiant, field tested positive for cocaine. The subject told the CI larger quantities could be purchased if the CI desired.

On December 10, 1992, the CI contacted the subject to purchase 1/8 ounce of cocaine. The subject indicated he needed to go to the Blackstone. Affiant was assisted with surveillance by Tpr. A. J. Duis, Deputy Schultz and Deputy Rea. Visual contact was maintained of the subject from the time he departed the CI's vehicle until entering the Blackstone Apartments. At that time, Tpr. Duis

maintained surveillance of the subject and observed the subject contact the subject known as "Carpo". The subject called the subject "Carpo" and they then entered apartment #317. Tpr. Duis maintained surveillance of this apartment until the subject left. Surveillance was then maintained until the subject contacted the CI. At this time, the subject deliver [sic] to the CI 1/8 ounce of cocaine. Affiant field tested the cocaine receiving a positive test result for cocaine.

When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the search warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992).

It is only the probability, and not a prima facie showing, of criminal activity which is the standard of probable cause for issuance of a search warrant. *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991); *State v. Sneed and Smith*, 231 Neb. 424, 436 N.W.2d 211 (1989).

The affidavit at issue first states that the affiant has received numerous intelligence reports from other officers that a subject referred to as "Carpo" is involved in the sale of cocaine. The intelligence information also reveals the true identity of this person as Flores, the defendant, and indicates that he lives at No. 317 of the Blackstone Apartments.

The affidavit next reveals that an officer of the state probation office had advised the affiant that one of his probationers, Lisa Hank, resides with Carpo at that address and that Carpo sells cocaine from that address. It then goes on to state that the affiant had a cooperating individual purchase cocaine from "the subject" on December 5, 1992. Although "the subject" is not identified, it becomes clear in the remainder of the paragraph that "the subject" here does not refer to Carpo, but, rather, refers to a third party who was observed going to the Blackstone Apartments, who delivered cocaine to the cooperating individual, and who stated to the cooperating

individual that he obtained the cocaine from Carpo.

Continuing, the affidavit discloses that on December 8 the cooperating individual contacted "the subject" again. "The subject" was followed to the Blackstone Apartments and again delivered cocaine to the cooperating individual, stating that larger quantities could be purchased if so desired. Following both of these purchases, the substance was field tested by the affiant and tested positive for cocaine.

The cooperating individual contacted "the subject" for the purchase of cocaine yet a third time, on December 10. "The subject" indicated that he needed to go to the Blackstone Apartments and was kept under surveillance from the time that he departed the cooperating individual's vehicle until he entered the building, at which time another investigator maintained the surveillance and observed the third-party subject contact the subject known as Carpo and enter apartment No. 317. That same investigator maintained surveillance until the third party left the apartment, and the third party was observed until he contacted the cooperating individual and delivered one-eighth of an ounce of cocaine. This substance also field tested positive for cocaine.

In *State v. Utterback*, 240 Neb. at 988, 485 N.W.2d at 768, we stated:

> Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, see *State v. Hoxworth*, 218 Neb. 647, 358 N.W.2d 208 (1984); (2) the informant is a citizen informant, see *State v. Duff*, 226 Neb. 567, 412 N.W.2d 843 (1987); (3) the informant has made a statement that is against his or her penal interest, see *State v. Sneed and Smith*, 231 Neb. 424, 436 N.W.2d 211 (1989); and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given, see *United States v. Stanert*, [762 F.2d 775 (9th Cir. 1985)].

In *Utterback*, we found that the affidavit in support of the search warrant had failed to establish the veracity and reliability

of the confidential informant under any of these methods. In regard to corroboration, we noted that the affidavit revealed only that the police had verified that the defendant lived at the described address, that the car in the driveway was registered to him, that the utilities at the house were registered to his wife, and that his physical description matched that given by the informant. We further stated:

> If the police had chosen to corroborate the information regarding any criminal activities of Utterback's rather than merely corroborating these innocent details of his life, see *U.S. v. Gibson*, 928 F.2d 250 (8th Cir. 1991), or had the affidavit contained other corroborative sources of information about the same alleged criminal activity of Utterback's, see *United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985), the veracity of the informant might have been established in the affidavit. However, no such corroboration is reflected in the detective's affidavit used to obtain the search warrant in this case.

*Utterback*, 240 Neb. at 993, 485 N.W.2d at 771.

In the instant case, the affiant in no way indicated that any of the informants had a reputation for reliability, nor were they citizen informants, nor had any of them made a statement against their penal interest, nor are we told the nature or basis of the intelligence information supposedly obtained from fellow police officers which would have established reliability. Accordingly, we find that the affidavit was not sufficient to support the issuance of the search warrant and that the district court erred in not sustaining the defendant's motion to suppress.

As we have found that the search warrant was improperly issued, it is not necessary that we discuss the defendant's claim of error regarding the statements or testimony of Hank.

As his final assignment of error, the defendant states that the district court erred in admitting evidence of a sale of cocaine between Craig Christensen and a confidential informant.

Riley testified that he participated in surveillance of an individual, Craig Christensen, on December 10, 1992. Defense counsel objected to this testimony on the grounds of relevance, arguing that there had been no foundation laid as to how

Christensen related to Flores. The court, noting that the objection was continuing, overruled the objection, and questioning of Riley proceeded:

Q. Why were you watching Craig Christensen?

A. I had a confidential informant purchasing or attempting to purchase cocaine from Mr. Christensen on December 10th.

Q. Did you personally watch Mr. Christensen?

A. Yes.

Q. Where did you first start watching Mr. Christensen at?

A. At his residence on Shady Bend — excuse me. On East Bismark.

MR. PICCOLO: Your honor, I would object on the grounds of foundation and personal knowledge.

THE COURT: It's overruled. Go ahead, Mr. Young.

Q. (By Mr. Young) Where did you go from there?

A. The cooperating individual and Mr. Christensen drove to the west side of Pier Park here in Grand Island.

Q. What happened then?

A. I monitored the cooperating individual count $220 for the purchase of one-eighth ounce of cocaine to Mr. Christensen. I then observed Mr. Christensen leave the confidential informant's vehicle and walk north on Pine Street.

MR. PICCOLO: Your Honor, I'll renew my objection. I believe I have it continuing, for the record, on the grounds of relevance.

THE COURT: It is continuing. Your objection is overruled.

Q. (By Mr. Young) What happened then?

A. I informed Investigator Chris Rea with the Hall County Sheriff's Department and Investigator — or Trooper Duis of the Nebraska State Patrol of Mr. Christensen's clothing and direction of travel. They then continued surveillance —

MR. PICCOLO: Your Honor, I object on the grounds of personal knowledge.

THE COURT: That objection is sustained.

Trooper A.J. Duis of the Nebraska State Patrol testified that at approximately 3:45 p.m. on December 10, 1992, he went to the Blackstone Apartments building in Grand Island. He stated that he waited on the stairs on the north end of the third floor for about 5 minutes. Christensen then arrived by himself. Christensen attempted to walk by, but was stopped by an unidentified female and waited 2 to 3 minutes. Duis then saw the defendant arrive, and he observed the defendant as he and two other males, including Christensen, and two females entered a residence identified as apartment No. 317. About 5 minutes later, he saw Christensen leave the apartment.

The next observance of Christensen was again by Riley:

Q. Trooper Riley, to back up, you have testified that early on the day of December 10, 1992, you had an individual named Craig Christensen under surveillance?

A. Yes.

Q. And that you then turned over the surveillance to Trooper Duis?

A. Yes.

Q. Did you see Craig Christensen again on December 10, 1992?

A. Yes. At approximately 4:15 p.m., I observed Mr. Christensen walking south on Pine Street back to Pier Park where the confidential informant's vehicle was parked.

Q. What happened then?

A. Craig Christensen entered the vehicle and handed —

MR. PICCOLO: Objection, Your Honor, on the grounds of personal knowledge and foundation as to personal knowledge.

THE COURT: I'll sustain it at this point. Ask another question.

MR. YOUNG: Thank you.

Q. (By Mr. Young) Were you able to observe what was going on inside the vehicle?

A. Other than the two occupants sitting in the vehicle, no.

Q. Did you observe Craig Christensen leave that vehicle?

A. Subsequently, yes.

Q. Did you then have contact with the confidential informant?

A. Yes.

Q. Had the confidential informant been searched prior to this?

A. The confidential informant had been searched and the confidential informant's vehicle had been searched. I followed the confidential —

MR. PICCOLO: Your Honor, I'm going to object on the grounds of relevance and also object on the grounds that the answer is somewhat nonresponsive as well.

THE COURT: I'll overrule it. Ask another question, Mr. Young.

MR. YOUNG: Thank you.

Q. (By Mr. Young) When you made contact with the confidential informant after Craig Christensen left, what happened?

A. The confidential informant handed me a plastic baggy containing an off-white powder believed to be cocaine that Craig Christensen had given the confidential informant.

MR. PICCOLO: I would object, Your Honor, on the grounds of personal knowledge to the last part of that answer.

THE COURT: Your objection is sustained as to the last part and the jury will disregard his response as to the last part of that question.

MR. YOUNG: For the record, Your Honor, is the last part, that was given to him by Craig Christensen?

THE COURT: That's correct.

It is evident from the preceding testimony that Riley did not actually observe an exchange of cocaine between Christensen and the unnamed cooperating individual. Further, it is not established in the record that the off-white powder which was allegedly exchanged was, in fact, cocaine, nor was there any testimony in the record to demonstrate that Christensen himself did not have the baggie of off-white powder on his person before engaging in the transaction detailed above. (Although

the cooperating individual was searched before the beginning of this transaction, Christensen was not.) Riley had earlier testified that he "monitored the cooperating individual count $220 for the purchase of one-eighth ounce of cocaine to Mr. Christensen," but it is not clear how the monitoring was performed. Riley did not state that the cooperating individual was wired for sound, nor did he state that he was actually close enough to hear the conversation between the two or that he did hear a conversation between the two. At best, Riley saw the cooperating individual give Christensen $220. The implication that the cooperating individual gave Christensen the money for the purchase of cocaine is unsupported by testimony in the record. Neither Christensen nor the cooperating individual testified about the exchange of money or the exchange of cocaine. Although Riley testified that some of the money given to the cooperating individual was found in apartment No. 317 when it was searched, it would be improper to infer that this money was used to purchase cocaine, when the evidence in the record does not even establish that Christensen possessed cocaine.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1989). Evidence which is not relevant is not admissible. Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 1989).

Here, the defendant was charged with possession of a controlled substance with intent to distribute. Therefore, only evidence which would tend to establish that the defendant possessed a controlled substance, or possessed a controlled substance with the intent to distribute, would be relevant. There is simply nothing in the record to establish whether Christensen possessed cocaine prior to going to apartment No. 317 and, therefore, whether he obtained cocaine from that apartment, and if he did, from which of the apartment's occupants or visitors. Other than by inference, Riley's testimony is insufficient to establish that Christensen gave a substance to the cooperating individual or that the substance was cocaine. In the

absence of evidence in the record that Christensen obtained cocaine from the defendant, any testimony in regard to his activities is irrelevant because it does not have any tendency to prove a fact at issue. The district court thus erred in admitting testimony in regard to Christensen's activities.

In a jury trial of a criminal case, whether an error in admitting or excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Hughes*, 244 Neb. 810, 510 N.W.2d 33 (1993); *State v. Toney*, 243 Neb. 237, 498 N.W.2d 544 (1993).

Constructive possession of an illegal substance may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the substance at the time of arrest or by a showing of dominion over the substance. *State v. Salas*, 231 Neb. 471, 436 N.W.2d 547 (1989); *State v. Bustos*, 230 Neb. 524, 432 N.W.2d 241 (1988).

Circumstantial evidence may support a finding that a defendant intended to distribute, deliver, or dispense a controlled substance in the defendant's possession. *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992); *State v. Zitterkopf*, 236 Neb. 743, 463 N.W.2d 616 (1990).

Circumstantial evidence to establish that possession of a controlled substance was with intent to distribute or deliver may consist of the quantity of the substance, the equipment and supplies found with it, the place it was found, the manner of packaging, and the testimony of witnesses experienced and knowledgeable in the field. *State v. Thomas, supra*; *State v. Oldfield*, 236 Neb. 433, 461 N.W.2d 554 (1990).

Disregarding the inadmissible evidence, the record here shows that Hank testified that she lived with the defendant in apartment No. 317 of the Blackstone Apartments building. Also, on December 10, 1992, that apartment was searched pursuant to a search warrant and investigators found a bag of cocaine, weighing slightly less than an ounce, and $854. The defendant and Hank were at the apartment when the search warrant was executed. One $20 bill and several $1 bills were found on the defendant. There was no evidence as to whether

the cocaine or the money found in the apartment belonged to Hank or to the defendant.

In *State v. 1987 Jeep Wagoneer*, 241 Neb. 397, 488 N.W.2d 546 (1992), Enzo Floridia appealed a district court order forfeiting to the State the vehicle he was driving when police stopped him and found cocaine in the pocket of his pants. The defendant argued that at the time of the vehicle's seizure, there was no indication regarding his intent to manufacture, distribute, deliver, dispense, export, or import the cocaine. One-eighth of an ounce of cocaine, or an "eight-ball," had been found on the defendant, and a search of the defendant's home had revealed an extensive collection of drug paraphernalia, as well as a note written by the defendant's fiancee and an unsigned note, which both indicated that the defendant was involved in the sale of cocaine. We found that from the evidence adduced by the State and the reasonable inferences which could be drawn from the evidence, a fact finder could find beyond a reasonable doubt that the defendant had cocaine in his possession while driving the vehicle and that he had the requisite intent to deliver the cocaine.

In *State v. Salas, supra*, the defendant argued that there was insufficient evidence to support his convictions for possession of marijuana with intent to deliver, possession of cocaine with intent to deliver, and delivery of cocaine. We noted that possession of a quantity of a controlled substance in a form customarily used for delivery or distribution will support an inference of possession with intent to deliver or distribute. See *State v. Lee*, 227 Neb. 277, 417 N.W.2d 26 (1987). We found in *Salas* that the amount of drugs found during the search of the premises where the defendant was residing, in addition to packaging material and a small scale commonly used for weighing drugs for sale, provided sufficient circumstantial evidence of possession with intent to deliver or distribute.

In the instant case there was no testimony in regard to paraphernalia or other evidence which would indicate that the cocaine had been divided or packaged for distribution. Although there was testimony as to the value of the cocaine which was found, there was no evidence which would indicate to the jury whether the amount of cocaine was or was not a

reasonable quantity for personal use. Only a small amount of money was found on the defendant himself.

Possession of a sufficiently large amount of a controlled substance, found in proximity to a large amount of money, may support an inference of possession with intent to deliver or distribute. Here, however, it cannot be said that the State has proved beyond a reasonable doubt that the quantity of cocaine and money was alone sufficient to establish that the defendant possessed the cocaine with the intent to distribute. The State has therefore failed to demonstrate that the error in admitting testimony in regard to Christensen's activities, which testimony implied that Christensen had obtained cocaine from the defendant, was harmless beyond a reasonable doubt.

The admission of the testimony of Riley over the objection of the defendant was prejudicial error, and the judgment of the district court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

HASTINGS, C.J., concurring.

I concur in the judgment of the court. However, I would have found the issuance of the search warrant to be proper. The supporting affidavit stated that the

> [a]ffiant has received numerous intelligence reports from the Grand Island Police Department and Hall County Sheriff's Office that a subject [known] as "Carpo" is heavily involved in the sale of cocaine. Intelligence information indicates this subject's true identify [sic] to be Salomon Flores residing at the Blackstone Apartments, #317, Grand Island, Nebraska.

Observations of fellow officers of the government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number. *State v. Huggins,* 186 Neb. 704, 185 N.W.2d 849 (1971).

In addition, the affidavit states that "Ron York from the State Probation Office advised affiant Lisa Hanks [sic] resides at the Blackstone Apartments, #317, with an individual known as 'Carpo'. York advised affiant Lisa Hanks (sic) had stated 'Carpo' sells cocaine from the apartment." One of the ways in

which reliability of an informant may be established is by showing in the affidavit that the informant has made a statement that is against his or her penal interest. *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992). Neb. Rev. Stat. § 29-2262(2)(h) (Cum. Supp. 1992) provides that when a court sentences an offender to probation, a court may require the offender as a condition of probation "[t]o refrain from frequenting unlawful or disreputable places or consorting with disreputable persons." Knowingly living with a person whom the probationer believes to be unlawfully distributing drugs certainly qualifies as a violation of subsection (2)(h) above.

Nor was the information received by law enforcement officials from Lisa Hank inadmissible as being in violation of Neb. Rev. Stat. § 29-2262.01 (Reissue 1989). Hank was indeed on probation at the time of these events. However, § 29-2262.01 prohibits the use of evidence obtained from a person on probation only while he or she was "acting as an undercover agent or employee of any law enforcement agency." Hank was neither.

In my view, the information set forth above was sufficient to support a "reasonable suspicion founded on articulable facts" within the meaning of *State v. Utterback*, 240 Neb. at 984, 485 N.W.2d at 766.

BOSLAUGH, J., and GRANT, J., Retired, join in this concurrence.