STATE OF NEBRASKA, APPELLEE,
V. ROBERT E. SWIFT, APPELLANT.
556 N.W.2d 243

Filed December 6, 1996.   No. S-95-853.

Adam J. Sipple and Casey J. Quinn, of Quinn & Wright, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

Following a bench trial, the district court adjudged the defendant-appellant, Robert E. Swift, guilty of being a felon in possession of a deadly weapon, in violation of Neb. Rev. Stat. § 28-1206 (Reissue 1989), and of possessing with the intent to deliver a controlled substance, namely cocaine, in violation of Neb. Rev. Stat. §§ 28-405(a)(4) [Schedule II] (Cum. Supp. 1992) and 28-416 (Cum. Supp. 1994). Swift thereupon appealed to the Nebraska Court of Appeals, asserting, among other things, that the district court erred in overruling his suppression motion. The Court of Appeals affirmed. *State v. Swift*, 96 NCA No. 17, case No. A-95-853 (not designated for permanent publication). Swift thereafter successfully moved this court for further review, urging, in summary, that the Court of Appeals erred in upholding the aforesaid ruling of the district court. We now affirm the judgment of the Court of Appeals.

## II. SCOPES OF REVIEW

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but,

rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Konfrst, post* p. 214, 556 N.W.2d 250 (1996). See *Ornelas v. U.S.*, ___ U.S. ___, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996). However, to the extent questions of law are involved, we as an appellate court have an obligation to reach conclusions independent of the decisions reached by the courts below. See, *State v. Severin,* 250 Neb. 841, 553 N.W.2d 452 (1996); *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996).

## III. FACTS

On April 5, 1994, while investigating a complaint at 5045 Mary Plaza, apartment D, Jody Larson, a Nebraska Department of Social Services worker, smelled marijuana and saw marijuana leaves and seeds on a table. Larson also saw a "skinny" black male, 6 feet 2 inches tall, who gave the name Robert Swift, and a thin white female with bleached blond hair, identified as Tammy Hartman. On April 6, Larson informed Omaha police officer James Haiar of her observations. Mary Plaza "apartment management" told Haiar that Hartman was in control of the apartment and that she had a boyfriend living with her, described as a slender black male, 6 feet 3 inches tall, who had just been released from prison. Apartment management also told Haiar that it had received complaints of possible drug dealing and frequent foot traffic in and out of the apartment. The Douglas County computer data base showed that Swift was using 5045 Mary Plaza, apartment D, as his address, and that Swift had been convicted for controlled substance (marijuana) delivery, "concealed weapons," and assault and battery.

On April 7, 1994, Haiar and Omaha police officer James Morgan filed an affidavit and application for issuance of a search warrant, alleging the foregoing paraphrased facts. On the same day, the Douglas County Court issued a search warrant which ordered the officers to enter the apartment "without knocking or announcing their authority" and to seize marijuana "and its derivatives, . . . [m]onies and records pertaining to an illegal narcotics operation," and venue items, such as keys. Notwithstanding the "no knock" provision of the warrant, the Omaha police waited to execute it until April 13, 1994. They

then found, among other things, a crack pipe (with cocaine residue); a bag of crack cocaine; a sweatsuit containing Swift's driver's license and money; two plastic bags of marijuana, each containing a gram; a hand gram scale; and in Swift's hand, a defaced, loaded .38-caliber revolver pointed at officers upon entry. The warrant was returned on April 14, 1994.

Swift claimed that the drugs and the gun belonged to Hartman. Haiar admitted that he did not expect to find the exact marijuana seen by Larson on April 5, but that he "was looking for marijuana, any marijuana that was illegal there." He also confirmed at the suppression hearing that Swift had recently been released from prison.

## IV. ANALYSIS

In urging that the Court of Appeals erred in upholding the district court's overruling of his suppression motion, Swift claims that it wrongly (1) credited hearsay information transmitted to government agents by apartment management personnel and (2) ruled that the warrant was not stale when executed.

### 1. HEARSAY INFORMATION

In evaluating the validity of a search warrant, the duty of a reviewing court is to ensure that the magistrate issuing the warrant had a substantial basis for determining that probable cause existed. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994).

Probable cause means a fair probability that contraband or evidence of a crime will be found. *State v. Konfrst, post* p. 214, 556 N.W.2d 250 (1996). In evaluating the showing of probable cause necessary to support the issuance of a search warrant, only the probability, and not a prima facie showing, of criminal activity is required. *State v. Cullen*, 231 Neb. 57, 434 N.W.2d 546 (1989).

In determining the sufficiency of an affidavit to show probable cause for the issuance of a search warrant, an appellate court looks to all the circumstances. This means that if the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, indicate there is a fair probability that evidence of a crime may be

found at the place described, the affidavit is sufficient. *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994).

When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. *State v. Reeder*, 249 Neb. 207, 543 N.W.2d 429 (1996); *Flores, supra*. Generally, there are four methods of establishing the reliability of an informant: (1) The informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, or (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996); *Reeder, supra*.

Swift contends that the information from apartment management concerning drug activity was not corroborated by any independent investigation. In *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992), the affidavit only corroborated that the defendant lived at the described address and that defendant's physical description matched that given by the informant. The *Utterback* court thus held that the veracity of the informant's information was not established by corroboration because nothing in the affidavit corroborated the reliability of the informant regarding the alleged criminal activities.

In the instant case, however, not only did the affidavit establish that the unidentified apartment management described the resident of the apartment almost exactly the way Larson described Swift, but Larson had smelled and seen marijuana and marijuana seeds in the apartment, thus corroborating apartment management's claim that it had received complaints about frequent foot traffic and drug dealing from the apartment. The affidavit also establishes the basis for Larson's knowledge, reciting that she was in the apartment and that because of the nature of her job, she was familiar with the smell and appearance of marijuana. Additionally, as the affidavit recites that

Larson observed a crime and reported it to the police, she is presumptively reliable. See *Detweiler, supra*. As noted in *State v. King*, 207 Neb. 270, 275, 298 N.W.2d 168, 171 (1980), where an affidavit is supported by citizen-provided information,

> "[r]eliability still must be shown, but it may appear by the very nature of the circumstances under which the incriminating information became known. Any other rule would lead to the totally unacceptable result that public-spirited citizens interested only in law enforcement could seldom furnish information sufficient to establish probable cause."

As we have previously observed, the after-the-fact scrutiny of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's determination of probable cause for the issuance of a search warrant should be paid great deference by reviewing courts. *Detweiler, supra*. While in determining the validity of a search warrant the reviewing court may consider only information brought to the attention of the issuing magistrate, *State v. Parmar*, 231 Neb. 687, 437 N.W.2d 503 (1989), warrants should not be invalidated by interpreting the supporting affidavit in a hypertechnical, rather than a commonsense, manner, *State v. Cullen*, 231 Neb. 57, 434 N.W.2d 546 (1989).

Although apartment management's comments to Haiar, standing alone, might not rise to the level of probable cause needed to obtain a search warrant, the comments, when viewed in the context of all the circumstances, make apparent that the magistrate had a substantial basis for determining that probable cause existed to believe that evidence of criminal activity would be found in the apartment.

## 2. STALENESS OF WARRANT

Swift next contends that in any event, his suppression motion should have been sustained because the information contained in the affidavit presented to the issuing magistrate had become stale by the time the warrant was executed.

Calling our attention to 2 Wayne R. LaFave, Search and Seizure, a Treatise on the Fourth Amendment § 4.7(a) at 588 (3d ed. 1996), Swift argues that probable cause must exist both at the time the magistrate issues a warrant and when the police execute it. That reference reads:

If the period of delay in execution has been such that the information supplied to the magistrate no longer shows probable cause, then the search is being made upon the judgment of the police officer rather than a neutral and detached magistrate, contrary to the requirement of the Fourth Amendment.

See, also, *U.S. v. Bowling*, 900 F.2d 926 (6th Cir. 1990), *cert. denied* 498 U.S. 837, 111 S. Ct. 109, 112 L. Ed. 2d 79. More specifically, Swift urges that as Haiar admitted that he did not expect to find the very marijuana that was seen at the apartment on April 5, no probable cause for the search existed when the warrant was executed on April 13.

Neb. Rev. Stat. § 29-815 (Reissue 1995) requires that a warrant "be executed and returned within ten days after its date." The warrant in question was executed within 6 days and returned within 7 days of its April 7 date. Notwithstanding that statutory provision, the defendant in *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991), argued that since the warrant to search his home was not executed until 9 days after it was issued, the search was unconstitutional because the information on which it was issued had become stale. *Groves* concluded that "the facts justifying the *issuance* of the warrant were sufficiently closely related to the time of the *issuance* of the warrant to justify the [required] finding of probable cause," and held that because the warrant was executed and returned within the statutory 10-day limit, the defendant's argument was without merit. (Emphasis supplied.) *Id.* at 672, 477 N.W.2d at 798.

It would appear *Groves* intended to observe that the facts justifying the *issuance* of the warrant were sufficiently related to the time of its *execution* as to justify the finding of probable cause at the latter time. It then concluded that under such a circumstance, execution and return of the warrant within the statutorily allowed 10 days resulted in a valid search.

However, it does not follow that compliance with the legislatively imposed time limit will in every instance result in a valid search. As noted in *Sgro v. United States*, 287 U.S. 206, 210, 53 S. Ct. 138, 77 L. Ed. 260 (1932), "[t]he proceeding by search warrant is a drastic one. Its abuse led to the adoption of the

Fourth Amendment, and this, together with legislation regulating the process, should be liberally construed in favor of the individual." Both U.S. Const. amend. IV and Neb. Const. art. I, § 7, protect against unreasonable searches and seizures by the government. *State v. Newman,* 250 Neb. 226, 548 N.W.2d 739 (1996). The general proscription of the Fourth Amendment is against unreasonable, not warrantless, searches. *State v. Donald,* 199 Neb. 70, 256 N.W.2d 107 (1977). "In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the [U.S. Supreme] Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution." *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970). Thus, the execution of a search warrant without probable cause is unreasonable and violates the Fourth Amendment and Neb. Const. art. I, § 7.

As explained in *United States v. Bedford,* 519 F.2d 650, 655 (3d Cir. 1975), *cert. denied* 424 U.S. 917, 96 S. Ct. 1120, 47 L. Ed. 2d 323 (1976):

> Since it is upon allegation of presently existing facts that a warrant is issued, it is essential that it be executed promptly, "in order to lessen the possibility that the facts upon which probable cause was initially based do not become dissipated." If the police were allowed to execute the warrant at leisure, the safeguard of judicial control over the search which the fourth amendment is intended to accomplish would be eviscerated. Thus, a search pursuant to a "stale" warrant is invalid.
>
> . . . Timeliness of execution should not be determined by means of a mechanical test with regard to the number of days from issuance, nor whether any cause for delay was per se reasonable or unreasonable. Rather it should be functionally measured in terms of whether probable cause still existed at the time the warrant was executed.

In *State v. Yaritz,* 287 N.W.2d 13, 16 (Minn. 1979), the Minnesota Supreme Court, after finding that the statute requiring that a warrant be executed within 10 days had been complied with, observed that "[a] related but more important issue is whether the [6-day] delay in the execution of the warrant con-

stituted a constitutional violation." According to the *Yaritz* court:

> Whether a delay in executing a search warrant is unconstitutional depends on whether the probable cause recited in the affidavit still exists at the time of execution of the warrant—that is, whether it is still likely that the items sought will be found in the place to be searched.

*Id.* In making that determination, the *Yaritz* court gave weight to LaFave's position that "the continuity of the crime is the most important factor in determining the staleness issue. 1 LaFave, Search and Seizure, § 3.7(a), p. 686." 287 N.W.2d at 17. The court reasoned that as the defendant was in the business of selling drugs and had been doing so on a continuing basis, it was reasonable to conclude that the probable cause which existed when the warrant was issued still existed 6 days later, when the warrant was executed.

The Supreme Court of Tennessee, in *State v. Evans*, 815 S.W.2d 503, 504 (Tenn. 1991), wrote that "probable cause must exist at the time of the execution of a search warrant just as it must at the time of its issuance." It also observed that "[i]n determining the question of staleness at the time of execution of a warrant, courts must consider the evidence on the basis of whether there is a violation of the Fourth Amendment and not simply a violation of the rule or statute." *Id.* at 505.

In *State v. Edwards*, 98 Wis. 2d 367, 372, 297 N.W.2d 12, 14-15 (1980), the Supreme Court of Wisconsin wrote that "[i]rrespective of compliance with a rule or statutory time limit within which a search must be executed, a delay in the execution of a warrant may be constitutionally impermissible under the Fourth Amendment." The court rejected any "test" that considers the reasonableness of the delay, stating that "the reasonableness of the searching officers' conduct is not material to the existence of probable cause, since the probable cause will either continue or dissipate regardless of how reasonable or unreasonable the police conduct involved." *Id.* at 373, 297 N.W.2d at 15. According to the *Edwards* court, the proper test for timeliness of execution of a search warrant is "(1) whether the warrant was executed in compliance with [the statutory period], and (2) if such compliance is found, whether the probable cause which existed at the

time of the issuance of the warrant still continued at the time of its execution." *Id.* at 376, 297 N.W.2d at 16.

Searches conducted pursuant to a warrant supported by probable cause are generally considered to be reasonable, *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996); consequently, if the police act pursuant to a search warrant, the defendant bears the burden of proof that the search or seizure is unreasonable, *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994).

Swift argues that because Haiar no longer expected to find the marijuana that Larson observed on April 5, 1994, probable cause no longer existed when the warrant was executed on April 13. But the affidavit on which the magistrate relied recited not only the existence of marijuana but complaints concerning frequent foot traffic and possible drug dealing, as well as that Swift had been convicted previously of distributing marijuana. In addition, the warrant ordered the seizure not only of marijuana "and its derivatives," but "[m]onies and records pertaining to an illegal narcotics operation," together with venue items, such as keys. The affidavit therefore provided probable cause to believe that Swift was continually dealing drugs out of the apartment. That being so, there was probable cause to believe that evidence of criminal activity existed at the apartment as of the time the warrant was executed. Such probable cause being present and the warrant being further both executed and returned within the statutorily limited time, the search was reasonable.

## V. JUDGMENT

Accordingly, the judgment of the Court of Appeals is, as noted in the first part of this opinion, affirmed.

AFFIRMED.