STATE OF NEBRASKA, APPELLEE,
v. MICHAEL E. JOHNSON, APPELLANT.
578 N.W. 2d 75

Filed April 21, 1998.   Nos. A-97-632, A-97-633.

Thomas A. Fitch, of Fitch & Tott Law Firm, for appellant.

Don Stenberg, Attorney General, and Ronald D. Moravec for appellee.

MILLER-LERMAN, Chief Judge, and IRWIN and INBODY, Judges.

MILLER-LERMAN, Chief Judge.

In these consolidated appeals, Michael E. Johnson (Johnson) appeals from the orders of the Dakota County District Court denying his motions to suppress physical evidence seized pursuant to a search warrant and the subsequent introduction of that evidence over objection at the consolidated trial. Case No. A-97-632 pertains to the information charging Johnson with possession with intent to distribute a controlled substance, identified as both methamphetamine and cocaine. Case No. A-97-633 pertains to the information charging Johnson with unlawful possession of a controlled substance, diazepam.

The judgment of the district court in case No. A-97-632 is reversed and the cause remanded for proceedings consistent with this opinion. The judgment of the district court in case No. A-97-633 is reversed and the cause remanded with directions to dismiss.

## FACTS

A warrant for the arrest of Johnson for failure to pay child support was issued on May 17, 1995. The warrant was made known to law enforcement officials the following day. On May 19, 1995, at approximately 11:25 p.m., South Sioux City, Nebraska, police officers Robert Johnson (Officer Johnson) and Terry Ivener were patrolling city streets, and they observed Johnson driving his car.

Ivener stated that Johnson's car entered traffic and traveled directly behind the officers' police car. Officer Johnson was driving the police car. He slowed its speed and pulled over to the right, allowing Johnson to pass the police car. Both officers

observed Johnson as he passed, and they visually confirmed his identity. Officer Johnson activated the police car's overhead emergency lights, and Johnson stopped his car after turning right at the next intersection.

Officer Johnson proceeded to make radio contact with Frank Peck, a Nebraska State Patrol officer in the vicinity who had a drug-sniffing dog with him. Meanwhile, Ivener exited the police car and approached Johnson's car. Johnson produced identification and exited his car. Ivener told Johnson that he was being placed under arrest and directed Johnson to place his hands on the car's trunk so that Ivener could conduct a pat-down search of Johnson's person.

Johnson complied with Ivener's request. Ivener testified that he felt a small, cylindrical object in one of Johnson's pockets. Johnson claimed the item was a knife. Ivener testified that "[i]t didn't feel like any knife that I've ever felt before." Upon Johnson's continued assertion that the object was a knife, Ivener handcuffed Johnson, reached into Johnson's pocket, and retrieved the object, which was a small, clear plastic vial with a black lid containing several small, off-white "rocks."

Ivener's suspicion that the rocks were methamphetamine was confirmed by chemical field tests performed at the site of the arrest. Johnson was placed in the rear seat of the police car, and Ivener proceeded to assist Peck in searching Johnson's car. Peck and Ivener were aided in their search by Peck's dog, which was specially trained to alert to the scent of narcotics. The dog alerted at the front seat of Johnson's vehicle, and the officers found a plastic baggie which contained two small paper packets. Ivener testified that he suspected the packets to be "snow seals," a commonly used means of containing methamphetamine and other drugs. The contents of each packet were subjected to a chemical field test at the arrest site, which indicated the contents to be methamphetamine. The total combined weight of the methamphetamine found in Johnson's car was less than 1 gram. Ivener testified at the suppression hearing that the amount found in the snow seals in Johnson's car, which was found to be .53 of a gram, was consistent with personal use. At trial, Nebraska State Patrol Investigator James Kelly also testified that the cumulative total of the methamphetamine found in

Johnson's car and in the vial in Johnson's pocket was consistent with personal use.

An empty snow seal was discovered in Johnson's billfold. The search of Johnson's billfold also yielded $269.50 in cash. Ivener testified that he found nothing else on Johnson's person or in Johnson's car which he suspected of being related to illegal drug activity.

Later, in the early morning hours of May 20, 1995, Ivener prepared a complaint and affidavit for a warrant to search Johnson's home. In the affidavit, Ivener described Johnson's arrest several hours earlier, including finding the snow seals in Johnson's car and billfold. Ivener did not allege in his affidavit that the amounts of methamphetamine discovered in Johnson's car and on his person were consistent with distribution. In the affidavit, Ivener swore that "I am aware that Michael E. Johnson is a person known to have engaged in the use and sale of controlled substances [and] that Michael E. Johnson has previously been convicted of drug charges." In the affidavit, Ivener claimed that based on his training and experience and from information received from other law enforcement officers, he was aware that "individuals frequently keep controlled substances on their persons . . . as well as at their residence [sic]." Ivener also claimed to be aware that "individuals involved in the possession, use and distribution of controlled substances use paraphernalia to ingest the controlled substance[;] that this paraphernalia is retained by the individual for . . . future use[;] and that this paraphernalia retains residue of the controlled substance." Ivener also stated that he had been to Johnson's home on "service calls" at least three times in the past. Ivener requested a warrant to search Johnson's home as soon as possible, to be served during "the hours of darkness" so as "to avoid any possibility of destruction of evidence."

Based upon Ivener's affidavit, the magistrate issued a search warrant which allowed officers to search Johnson's home for the following:

> Controlled Substances including but not limited to cocaine, methamphetamine and marijuana; drug paraphernalia, homemade or otherwise; telephone answering machines or other devices used to record messages or con-

versations; records, documents and U.S. currency or other monies resulting from controlled substances transactions; vehicles and other devices used for transportation of controlled substances; scales used to weigh cocaine, methamphetamine and marijuana or other controlled substances; packaging materials for controlled substances; computers or other electronic devices to maintain records of controlled substances transactions; hand written notes, books, diaries or other documents used to maintain records of controlled substances transactions; weapons, firearms and ammunition used in the furtherance of controlled substances transactions; and/or other drug paraphernalia as defined by Nebraska State Statutes, and any evidence of occupancy.

Upon obtaining the warrant, Ivener and other officers proceeded to search Johnson's home at 2 a.m. on May 20, 1995. The officers seized numerous items from Johnson's home, including a small quantity of cocaine; a triple-beam scale; precut small squares of glossy paper alleged to be unused snow seals; a jewelry catalog with glossy pages containing photographs and lettering consistent with those on the unused snow seals; two pairs of scissors; a razor blade and a small, black glass board; and drug paraphernalia. The officers also seized tablets which were later determined to contain diazepam, a pharmaceutical drug which acts as a depressant to the human central nervous system. The discovery of the diazepam led to the filing of a separate charge.

Johnson was charged in separate informations with one count of possession of cocaine and methamphetamine with intent to deliver, a Class II felony in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1994), and one count of unauthorized possession of diazepam, a Class IV felony in violation of § 28-416(3).

Before trial, Johnson filed a motion in each case to suppress the physical evidence obtained from the search of his home, alleging, inter alia, that the search warrant was not supported by probable cause. Separate hearings were held in each case. Ivener personally testified at the first suppression hearing. His transcribed testimony was admitted at the second suppression

hearing, in lieu of live testimony. The trial court denied both of Johnson's motions to suppress evidence seized in the search of Johnson's home.

The charges against Johnson were consolidated and tried to a jury on March 26 through 28, 1997. Evidence gathered from the search of Johnson's home was introduced at trial over objection. The jury convicted Johnson of possession of methamphetamine and/or cocaine with intent to deliver, a Class II felony, and unauthorized possession of diazepam, a Class IV felony.

Johnson was sentenced to a term of 2 to 4 years' imprisonment for the possession of methamphetamine and cocaine with intent to deliver and a concurrent term of 1 to 2 years' imprisonment for the unauthorized possession of diazepam. At the time of sentencing, Johnson was also sentenced to 1 to 2 years' imprisonment on an unrelated charge of failure to appear, to be served consecutively to the sentences involved in these consolidated appeals. Johnson appeals from his convictions for possession with intent to deliver and unauthorized possession.

## ASSIGNMENTS OF ERROR

Johnson filed separate notices of appeal in each of the cases pertaining to charges for controlled substances. In each appeal, Johnson claims that the trial court erred in overruling his motion to suppress items which were seized from his home pursuant to a search warrant and in admitting those items into evidence at trial over objection. Because the cases were tried together and the errors assigned in each case are identical, this court consolidated the cases for the purpose of appellate review.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Swift*, 251 Neb. 204, 556 N.W.2d 243 (1996). On questions of law, an appellate court has an obligation to reach con-

clusions independent of the decisions reached by the court below. *Id.*

In evaluating the validity of a search warrant, the duty of a reviewing court is to ensure that the magistrate issuing the warrant had a substantial basis for finding the existence of a fair probability that evidence of a crime or contraband would be found. *State v. Valdez,* 5 Neb. App. 506, 562 N.W.2d 64 (1997). See, also, *State v. Detweiler,* 249 Neb. 485, 544 N.W.2d 83 (1996). An appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit underlying a search warrant. Evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *State v. Utterback,* 240 Neb. 981, 485 N.W.2d 760 (1992). To be valid, a search warrant must be supported by an affidavit establishing probable cause, or reasonable suspicion founded on articulable facts. *State v. Flores,* 245 Neb. 179, 512 N.W.2d 128 (1994).

## ANALYSIS

*Searches Pursuant to Warrants.*

Searches conducted pursuant to warrants supported by probable cause are generally considered to be reasonable. *State v. Swift, supra.* Since a defendant seeking to suppress evidence seized in a search of his or her home pursuant to a search warrant has the burden of establishing that the search was improper and that the fruits of the search should be suppressed, the initial burden of proof is on Johnson. See Neb. Rev. Stat. § 29-822 (Reissue 1995). See, also, *State v. Swift, supra.* If the defendant establishes a prima facie case of an unconstitutional search and seizure, the burden of proof shifts to the State to establish that the search and seizure were constitutionally permissible. *State v. Harms,* 233 Neb. 882, 449 N.W.2d 1 (1989).

Johnson claims generally that the search of his home was unreasonable and constitutionally impermissible because there was no probable cause for the search. He specifically argues that possession of methamphetamine in the amount found in his vehicle several hours earlier, an amount Ivener testified was consistent with personal use, was not a sufficient basis to later search his residence. Johnson challenges the sufficiency of the affidavit used to obtain the warrant.

■ Since a citizen's expectation of privacy is greatest in his or her home, it follows that Johnson had a reasonable expectation of privacy in his home. See *State v. Farber*, 1 Neb. App. 460, 498 N.W.2d 797 (1993). See, also, *Mincey v. Arizona*, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978). To be valid, the search warrant obtained by Ivener must have been supported by an affidavit establishing probable cause to search the home or by reasonable suspicion based on articulable facts that evidence of crime would be found in the home. See *State v. Flores, supra*. In evaluating such probable cause, only a probability, rather than a prima facie showing, of criminal activity is required. *Id.* Probable cause to believe that a person has committed a crime previously and elsewhere is not, by itself, adequate to secure a search warrant for the person's home or another place. *U.S. v. Ramos*, 923 F.2d 1346 (9th Cir. 1991). General searches simply to find evidence of any crime are constitutionally impermissible. See *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992).

■ We look to the totality of the circumstances to determine the sufficiency of an affidavit offered to show probable cause for a search warrant. If the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, indicate there is a fair probability that evidence may be found at the place described, the affidavit is sufficient. See *State v. Flores, supra*. See, also, *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). A search warrant should not be invalidated by interpreting the supporting affidavit in a hypertechnical, rather than a commonsense, manner. *State v. Swift*, 251 Neb. 204, 556 N.W.2d 243 (1996).

■ The three-page Ivener affidavit regarding the earlier vehicle stop coupled with historical information and statements regarding drug activity in general was the exclusive basis offered to the magistrate to determine probable cause to issue the subsequent search warrant of Johnson's home. We examine the statements in the affidavit to determine if taken together they provide probable cause. See *Illinois v. Gates, supra*. We also review the affidavit to determine if the facts therein are " ' "so closely related to the time of the issuance of the warrant

as to justify a finding of probable cause at that time." ' " *State v. Valdez*, 5 Neb. App. 506, 516, 562 N.W.2d 64, 72 (1997). Probable cause for a search warrant may be founded on a law enforcement officer's personal knowledge, on hearsay, or on information from an informant. If the information is in the nature of hearsay or is otherwise beyond the officer's personal knowledge, it must be supported with indicia of the source's reliability. See, *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994); *State v. Valdez, supra.* Hearsay observations of a fellow law enforcement officer may provide a reliable basis for a probable cause finding if the officer supplying the hearsay information is actively involved in the investigation. See *State v. Huggins*, 186 Neb. 704, 185 N.W.2d 849 (1971).

It has been stated: " ' "Proof of probable cause justifying issuance of a search warrant generally must consist of facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time." ' " *Valdez*, 5 Neb. App. at 516, 562 N.W.2d at 72. " '[P]robable cause must exist at the time of the execution of a search warrant just as it must at the time of its issuance.' " *Swift*, 251 Neb. at 213, 556 N.W.2d at 250, quoting *State v. Evans*, 815 S.W.2d 503 (Tenn. 1991).

*Ivener's Affidavit.*

In our appellate review of Johnson's claim regarding the sufficiency of the affidavit to support the search warrant, we review the four corners of the affidavit to see if probable cause is established. See *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992).

In his affidavit, Ivener asserts that a warrant had been issued for Johnson's arrest; that he observed Johnson driving on May 19, 1995; and that he arrested Johnson. The affidavit does not state the basis for the arrest warrant. Ivener's affidavit describes his discovery of a vial of methamphetamine in Johnson's pocket after Johnson's arrest and of the two snow seals in a plastic baggie in the front seat of Johnson's car, without an indication of the amount found—which amount was consistent with personal use, as Ivener later testified.

The affidavit continues in paragraph 6 that based on Invener's experience, he was aware that "individuals frequently

keep controlled substances on their persons . . . *as well as at their residence* [sic]." (Emphasis supplied.)

In paragraph 7, Ivener states that based on his "experience, and from information received from other law enforcement officers, that individuals involved in the possession, use *and distribution* of controlled substances use paraphernalia to ingest the controlled substance[;] that this paraphernalia is retained by the individual for . . . future use[;] and that this paraphernalia retains residue of the controlled substance." (Emphasis supplied.)

In paragraph 8, Ivener states that "I am aware that Michael E. Johnson is a person known to have engaged in the use *and sale* of controlled substances. I am further aware that Michael E. Johnson has *previously been convicted of drug charges.* I know that Michael E. Johnson lives at 3401 El Dorado Way, South Sioux City, Dakota County, Nebraska as *I have been to his home on service calls* on at least three separate occasions." (Emphasis supplied.)

Paragraphs 6 and 7 of the affidavit describe the purported habits of drug users in general without attribution and do not explain how these generalizations applied by particularized facts to Johnson. There is nothing in the record that links these concepts to particularized articulable facts that provide probable cause for the search of Johnson's house hours after the vehicle stop in a different location.

Paragraph 8 of the affidavit attests that Johnson "is a person known to have engaged in the use and sale of controlled substances" and that Johnson "has previously been convicted of drug charges." The source of this knowledge is not disclosed. Furthermore, this paragraph regarding Johnson's past, without an indication of the time in the past of the event referred to, fails to support a reasonable finding of probable cause to search Johnson's residence at the time in question. For the sake of completeness, we note that the testimony shows that the statement regarding Johnson's drug history pertains to a drug conviction which was 10 years prior to this incident.

As to the statement in the affidavit that Ivener had visited Johnson's residence at least three times before for "service calls," there is no indication in the affidavit as to the dates or

purposes of these calls or that anything drug related was observed during these calls.

*Was There Probable Cause to Issue Search Warrant?*

It is uncontroverted that Ivener's affidavit, standing alone, was the entire basis presented to the magistrate in support of Ivener's request for a search warrant. Based upon our review of the affidavit, we find that the warrant issued for the search of Johnson's house was not supported by probable cause.

The information in the affidavit concerning Johnson's prior criminal conviction failed to indicate a timeframe for the previous conviction and, in fact, was simply too old to be probative of present probable cause. *State v. Reeder*, 249 Neb. 207, 212, 543 N.W.2d 429, 433 (1996), quoting *State v. Hodge and Carpenter*, 225 Neb. 94, 402 N.W.2d 867 (1987), reiterates the imperative that " '[p]roof of probable cause justifying issuance of a search warrant generally must consist of facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause *at that time*.' " (Emphasis supplied.) The affidavit does not state that the prior conviction was closely linked in time to the current episode. The prior conviction does not compel a finding of probable cause to search Johnson's residence at the time of his May 19, 1995, arrest.

Taken as a whole, the affidavit, which describes a vehicle stop, does not explain why Johnson's home should be searched. The statements and allegations in the affidavit do not support issuance of a warrant to search Johnson's home. Compare *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993). In this regard, we agree with the reasoning expressed in *U.S. v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988), which states:

> The affidavit . . . does not offer an explanation of why the police believed they may find incriminating evidence there; the affidavit simply lists the . . . address as a location to be searched. It is critical to a showing of probable cause that the affidavit state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched.

It has been held that the arrest of a defendant's alleged roommate, pursuant to a vehicle stop, for possession of a large quantity of cocaine on her person did not provide probable cause to search the defendant's residence at a later time. See *United States v. Stout*, 641 F. Supp. 1074 (N.D. Cal. 1986). It has also been held that there was no probable cause for the issuance of a search warrant for a defendant's home based on the defendant's arrest, pursuant to a vehicle stop a few hours earlier, on a drug possession charge, even though cocaine found in the defendant's vehicle was in a quantity greater than for personal use. See *Minnesota v. Kahn*, 555 N.W.2d 15 (Minn. App. 1996). Compare *State v. Godbersen*, 493 N.W.2d 852 (Iowa 1992) (holding that where drugs found in car were packaged to indicate person is involved in drug dealing there existed reasonable belief that person kept drugs, weighing and measuring devices, packaging materials, and profits at residence). It has been observed that if mere probable cause to arrest a suspect also established probable cause to search the suspect's home, there would be no reason to distinguish search warrants from arrest warrants. *United States v. Lucarz*, 430 F.2d 1051 (9th Cir. 1970).

In the instant case, the supporting affidavit contains generalizations about the habits of users and dealers of controlled substances. There are no articulable facts in the affidavit to support a finding of probable cause that these generalizations applied to Johnson. The facts of Johnson's arrest hours earlier, of the discovery of drugs without an indication of the amount or an inference that the amount was other than that consistent with personal use, and of a prior conviction at some unspecified time in the past did not support the issuance of the search warrant.

## CONCLUSION

We find that the search warrant at issue was not supported by probable cause and that the fruits of that search were not admissible. Therefore, we reverse the trial court's orders overruling Johnson's motions to suppress and the objection to the admission of the evidence obtained from the search of his house.

The evidence supporting Johnson's conviction for possession of diazepam in case No. A-97-633 was obtained entirely from

the unlawful search of Johnson's house, and for that reason, the district court's judgment and its conviction of Johnson for this offense must be reversed and the cause remanded with directions to dismiss for lack of evidence.

Evidence in case No. A-97-632 of the triple-beam scale, unused snow seals, scissors, catalog, and other objects seized from Johnson's house must be excluded as the result of an invalid search. After suppression of the foregoing evidence, there remains admissible evidence in case No. A-97-632, including, inter alia, the methamphetamine found on Johnson at the time of his arrest. Therefore, we reverse the judgment and remand the cause in case No. A-97-632 to the trial court for proceedings consistent with this opinion.

JUDGMENT IN NO. A-97-632 REVERSED, AND
CAUSE REMANDED FOR FURTHER PROCEEDINGS.
JUDGMENT IN NO. A-97-633 REVERSED, AND
CAUSE REMANDED WITH DIRECTIONS TO DISMISS.